Judgment accordingly.

BROWN CHEMICAL COMPANY v. ATKINSON, COBB & CO.

*Contracts in commercial transactions — Letter-evidence — Fertilizer Tax — Parol evidence of usage.*

1. The letter of a partner submitting propositions in reference to the sale of goods, in response to inquiries of the defendant, is admissible upon trial of an action to recover the price of the goods, as bearing on the contract of sale.

2. Where a company in Baltimore agrees with a merchant in North Carolina "to give him the right to sell" its commercial fertilizer in this state, the contract is to be interpreted as meaning the *privilege* of selling, which privilege must be acquired by payment of the license tax by the company.

3. Parol evidence is admissible to show the custom or usage of a place where a contract is entered into; and this, upon the principle, that it is presumed the parties did not mean to express in writing the whole of the contract by which they intended to be bound, but a contract with reference to such usage.

(*Bobbitt* v. *Ins. Co.*, 66 N. C., 70 ; *Moore* v. *Eason*, 11 Ired., 568; *Vaughan* v. *Railroad*, 63 N. C., 11, cited and approved.)

BROWN *v.* ATKINSON.

CIVIL·ACTION, tried at Spring Term, 1884, of WILSON Superior Court, before *Shepherd, J.*

The action was brought to recover for goods sold to the defendants. The allegations in the pleadings are substantially set out in the opinion of this court. It was admitted that the contract of sale was made in the town of Wilson, N. C., and that the goods (the commercial fertilizers) were delivered as alleged.

The correspondence between the parties referred to in the opinion, and bearing upon the contract and the issue submitted to the jury, is as follows :

[Exhibit " A."] BALTIMORE, MD., Dec. 17, 1880.
*Messrs. Baker & Cobb, Wilson, N. C. :*

GENTLEMEN :—I will give you the right to sell Powell's Prepared Chemicals and Tip Top Fertilizer at Wilson and Sparta, North Carolina, on the following terms: Powell's Chemicals at $9 cash per formula, f. o. b. here ; $9.50 your note 4 months ; $10 payable November 1st, 1881, as per printed terms sent herewith. Tip Top Fertilizer I will sell you in car load lots at $27 f. o. b. ; 30 days $28 ; your note 4 months $30 ; payable November 1st, 1881, on terms as printed. Pamphlets will be mailed to every farmer in your state, and the Chemicals advertised in every paper of prominence. Yours, &c.,

W. S. POWELL, Treasurer.

[Exhibit " F."] WILSON, N. C., Jan. 14, 1881.
*Brown Chemical Co. Baltimore :*

DEAR SIRS :—Please ship us to Wilson, N. C., ten tons (1 car load) Tip Top. Prepay freight and we will remit amount of freight. Send circulars, &c., for us to distribute amongst our customers.

Yours truly,

ATKINSON, COBB & Co.

BROWN *v.* ATKINSON.

[Exhibit ." G."]    BALTIMORE, MD., Jan. 15, 1881.
*Messrs. Atkinson, Cobb & Co., Wilson, N. C. :*

GENTLEMEN :—Your kind order for ten tons Tip Top Fertilizer to hand which we do not enter, as you do not say on what terms you want it, and our invariable rule is to have all understandings first to prevent misunderstandings afterwards. We submitted two propositions to your partner when in our office: 1st. We would sell you on 30 days' time f. o. b. here *Powell's Chemicals* for any crop per formula at $8.50, in car load lots, and Tip Top Fertilizer at $27 a ton, same terms, or if your reference were satisfactory, your note at 4 months, 6 per cent. interest added, would be accepted as cash. The 2d proposition : We would sell you on your note, payable November 1st, 15 and December 1st, equal amounts for your purchase, secured by liens of the farmers to whom the fertilizers were sold, or other satisfactory security, at your option ; note bearing interest at 6 per cent. per annum from date of shipments, *Powell's Prepared Chemicals* at $9 a formula, and Tip Top at $30 on same terms. All settlements, whether cash or time, to be made in our office within 30 days from date of shipments.

Now, gentlemen, this is not questioning in any way the responsibility of your firm, but it is our way of doing business, and for our correctness and responsibility we refer you to any banker or merchant in the city. If these terms are acceptable, we should appreciate your approximating about what your wants will be. Our orders are coming in very heavy, and we do not wish to disappoint you if we can avoid it.

Yours, &c.,

BROWN CHEMICAL CO.

[Exhibit " H."]    WILSON, N. C., Jan. 18, 1881.
*Brown Chemical Co., Baltimore :*

DEAR SIR :—Yours of 15th to hand. We propose to pay

cash for whatever we use of the "Tip Top" at prices men-
tioned in yours.   When can you ship us a lot (say car load)?
Please let us hear from you.   Send circulars, &c.

> Yours truly,
>
> ATKINSON, COBB & Co.

We give you for reference Mrs. Townsend, Whitley & Co.,
of your city.

The issue—" Was it a part of the contract that the license
tax was to be paid on the guano by the plaintiffs?"

To show the contract between the parties, the plaintiffs
introduced the letters marked " Exhibit F, G, and H."

The defendant, James T. Cobb, was introduced as a wit-
ness for the defendants, who testified that on the 17th of
December, 1880, he and one J. H. Baker were a mercantile
firm in Wilson, under the name and style of Baker & Cobb :
that the defendant's firm went into business on the 1st day
of January, 1881; that on the said 17th of December the
defendant had a conversation with W. S. Powell, one of the
plaintiff's firm, in the plaintiff's office .in Baltimore, in
which he informed him that the defendant firm would go
into business on the first of the next January, consisting in
part of himself and the said Baker; that he wished to know
the terms on which fertilizers could be bought by the new
firm when it went into operation, and that thereupon the
said Powell wrote a letter addressed to the said Baker &
Cobb, which was submitted to the defendant firm in Janu-
ary, 1881, upon which the foregoing letter of defendants to
plaintiffs of January 14th, 1881, was written.

The letter to Baker & Cobb, marked " Exhibit A," was
then offered in evidence.   The plaintiffs objected.   Objec-
tion overruled, and plaintiffs excepted.   The letter was then
read in evidence.

T. J. Hadley, a witness for defendants, was asked by de-
fendants' counsel what was the custom of the manufacturers

and dealers in commercial fertilizers in Baltimore as to the payment of said license tax.    Plaintiffs objected.    Objection overruled and plaintiffs excepted.

Plaintiffs' counsel was then allowed to examine the witness, before answering the questions, as to the grounds of his knowledge of such custom.    Whereupon witness stated that he had been in business since 1871; that since the act establishing said tax he had dealt in four different brands of fertilizers; that his knowledge was based on newspaper reports and advertisement, on the fact that the agent of the department of agriculture had been in Wilson and had not seized the fertilizers; that he had been a member of several firms, and had dealt largely in such fertilizers, and was familiar with the dealings in fertilizers in Wilson and the surrounding country; that he had seen licenses issued to different mercantile firms and the agricultural reports, had heard statements made by the agents of the manufacturers and dealers, and the agent of the department of agriculture; that he did not know, of his own knowledge, that the other dealers in Wilson did not pay said tax, but that it was generally understood and acted upon that the taxes were paid in Baltimore.    All the fertilizers that he had seen brought here were marked " tax paid."    There is a general warehouse in Wilson in which they are all deposited upon arrival.

The plaintiffs thereupon objected to the witness answering the questions, because he had not qualified himself to do so.    The objection was overruled, and plaintiffs excepted.

The witness then testified that he knew what the universal custom was, and what was generally understood and acted upon by the merchants of Wilson and vicinity in their dealings with fertilizer companies in Baltimore; that such custom was that the companies paid the license tax.    The plaintiffs excepted.

The jury responded to the issue in the affirmative. Motion for new trial, &c. Judgment for the defendants, from which the plaintiffs appealed.

*Msssrs. Strong & Smedes*, for plaintiffs.
*Messrs. H. F. Murray* and *Connor & Woodard*, for defendants.

ASHE, J.   The plaintiffs, partners in trade and doing business in the city of Baltimore, seek by this action to recover from the defendants, merchants and partners doing business in the town of Wilson, North Carolina, the balance of the value of forty tons of "Powell's Tip Top Fertilizer" at twenty-seven dollars per ton, sold and delivered to the defendants between January 1st and March 1st, 1881, at Wilson.

The plaintiffs allege that only the sum of $595 has been paid by the defendants, and they demand judgment for the balance.

The defendants plead a counter-claim, and allege that the plaintiffs agreed to give them the right to sell the fertilizer in North Carolina, the right to do which could only be acquired by the payment of a tax of $500 to the board of agriculture; but that after the receipt of the goods at Wilson, in consequence of the failure of the plaintiffs to pay said tax, the fertilizer was seized by the commissioner of agriculture and the defendants were compelled to pay the $500 tax to relieve the fertilizer from the seizure.

The only issue raised by the pleadings which was submitted to the jury, was:

" Was it a part of the contract that the license tax was to be paid on the guano by the plantiffs ? "

On the trial of the issue several exceptions were taken by the plaintiffs to His Honor's ruling in the admission of testimony, and to his refusal after verdict to grant a new

trial because of errors assigned in his rulings, and his refusal to render a judgment, notwithstanding the verdict, upon the admission of the defendants.

The first exception was to the admission of the letter written by W. S. Powell, treasurer, to the defendants, dated Baltimore, December 17th, 1880, and marked "A" in the record. The ground of the objection to the reception of the letter is not stated in the record. If Powell was one of the firm of the Brown Chemical Company, the letter was admissible as a proposition from the company. James T. Cobb, one of the defendants examined as a witness in their behalf, testified that before the date of this letter he was in Baltimore in December, 1880, and had a conversation with Powell, the writer of the letter, who was one of the partners of the plaintiff firm, in their office, in reference to the terms upon which he and his partners could purchase fertilizers from the plaintiff company, and afterwards they received the letter in question from the plaintiffs. In the plaintiffs' letter to them, marked "G," they say, "we submitted two propositions to your partner when in our office." This evidently referred to the interview between the witness Cobb and Powell, for it does not appear that either of the partners of the defendant firm was at any other time in their office; and it recognized Powell as a partner, and also the propositions made by Powell to Cobb. For the propositions of Powell were not made at that time, but subsequently, in the letter of date December 17th, 1880, in response to the inquiries made by the defendant Cobb at the interview in the office. And Powell being shown to be a partner, the letter was admissible in evidence; and it was proper to be left to the jury, in connection with the other letters offered in evidence, as bearing upon the issue before them.

The letters were all about the same subject matter between the same parties, and referring to the same contract, and were therefore admissible. *Bobbitt* v. *Insurance Co.*, 66 N.

C., 70; Starkie on Evi., 95; 2 Parsons on Cont., 553; Colburn v. Dawson, 10 C. B., 4 Eng. L. and Eq., 378.

The letters objected to had a direct and important bearing upon the question submitted to the jury. The plaintiffs, through their partner Powell, say, "I will give you the right to sell 'Tip Top Fertilizer' at Wilson and Sparta, North Carolina," upon terms thereafter mentioned. What was the right stipulated to be given? Can it be other than the privilege of selling the article in this state? But by section 2190 of THE CODE, that privilege can only be acquired by paying the tax of $500, and to give the privilege necessarily implied that the plaintiffs had acquired the privilege to do so.

The second and third exceptions were to the ruling of the court in admitting evidence in regard to the custom of manufacturers and dealers in commercial fertilizers in Baltimore, as to the payment of said license tax. The plaintiffs objected to the introduction of the testimony and to the competency of the witness who was offered to establish the custom.

The witness (Hadley), after stating the means and opportunities he had had of obtaining a knowledge of the custom (which we think were sufficient to make him competent to speak of the custom), testified that he knew what the universal custom was, and what was generally understood and acted upon by merchants of Wilson and vicinity in their dealings with fertilizer companies in Baltimore; *and that such custom was that the companies paid the license tax.*

We are of opinion the testimony of the witness was sufficient to establish the existence of the custom or usage in the town of Wilson, and afforded evidence, pertinent to the issue, to be considered by the jury, for it was admitted on the trial that the contract was made in the town of Wilson; and every contract with respect to any business or dealing, when the contrary is not expressed, or cannot be reasonably ferred, is presumed to be made with reference to the usage

of the place where it is entered into. The question, then, propounded to the witness—what was the custom of manufacturers and dealers in commercial fertilizers in Baltimore, as to the payment of the license tax? must be taken as having reference to those dealings with traders in the town of Wilson. And it is well settled that parol evidence may be admitted to show a custom or usage of a *place* where a contract is entered into, for the purpose of annexing incidents to, and explaining the meaning of terms used in it, *Moore* v. *Eason*, 11 Ired., 568; and this court in deciding that case relied upon the case of *Hutton* v. *Warren*, 1 M. & W., 475, which is a leading English decision upon the subject, where it was held that, in commercial transactions, extrinsic evidence of a custom and usage is admissible to annex incidents to written contracts in matters with respect to which they are silent. The same rule has also been applied to contracts in other transactions of life, in which known usages have been established and prevailed. And this has been done upon the principle of presumption that in such transactions the parties did not mean to express in writing the whole of the contract by which they intended to be bound, but a contract with reference to these known usages. On same point, we refer to Starkie on Evi., 709; *Wigglesworth* v. *Dollison*, Doug., 201; *Van Ness* v. *Packard*, 2 Pet., 137, and *Vaughan* v. *Railroad*, 63 N. C., 11.

The fourth exception, to the refusal of His Honor to grant a new trial, cannot be sustained, for that was a matter within his discretion.

And the last exception which was to his refusal to render judgment in behalf of the plaintiffs, *non obstante veredicto*, was properly overruled, for we see nothing in the record which could have warranted the court in rendering such a judgment.

There is no error, and the judgment of the superior court is therefore affirmed.

No error.                                  Affirmed.