JOSEPH H. WATTERS v. M. W. HEDGPETH AND W. A. HEDGPETH.

(Filed 25 October, 1916.)

**1. Homestead—Conveyance—Limitation of Actions—Judgments—Executions.**

The laying off of a homestead under a docketed judgment suspends the statute of limitations during the continuance of the homestead, and when it has been laid off since the enactment of the statute it is taken by the homesteader subject to its provisions, and upon conveyance thereof is subject to execution under the judgment. Revisal, sec. 686.

**2. Accord and Satisfaction—Conditional Acceptance—Contracts.**

The acceptance of an offer of compromise must be in accordance with its terms to be binding between the parties, and where an offer is made by a debtor to pay 10 per cent of the amount of a judgment, an acceptance of "10 per cent net" implies a variance between the parties, and is held, in this case, not to be binding.

**3. Bankruptcy—Homestead—Conveyances — Judgments — Executions — Statutes.**

Title to exempt property does not pass to the trustee in bankruptcy, and where the debtor's homestead has been laid off and the lien of a judgment has attached thereto more than four months before the filing of the petition in the bankrupt court, and the judgment creditor has proved his claim as unsecured and the homestead again laid off in proceedings in the bankrupt court, after the discharge of the bankrupt, the judgment creditor, under whose judgment the homestead was first laid off, may issue execution against the lands after the same has been conveyed by the homesteader. Revisal, sec. 686. *Blum v. Ellis*, 73 N. C., .293, cited and distinguished.

**4. Bankruptcy—Homestead—Title—Bankrupt's Property—Discharge.**

A judgment debtor has no property in a homestead laid off ·to him under a judgment, but merely an exemption from sale, and the land is practically the property of the judgment creditor, to the extent of his lien. Hence, a homestead laid off under our laws is not subject to the jurisdiction of the bankrupt court, and a lien of judgment thereon is not affected by the discharge of the ·bankrupt therein.

**5. Bankruptcy—Homestead—State Decision.**

The bankrupt court is bound by the construction put upon our exemption laws by the Supreme Court.

**6. Bankruptcy—Homestead—Unsecured Claims—Judgments—Credits.**

Where a judgment creditor, holding a valid lien upon the debtor's homestead, laid off under his judgment, thereafter proves his claim as unsecured against his debtor in the bankrupt court, any sum he may receive under a distribution of the assets will be credited upon his judgment, and will reduce the amount thereof to that extent.

APPEAL by defendants from *Stacy, J.*, at chambers in NEW HANOVER, 16 March, 1916·.

This was a motion for leave to issue execution, heard upon agreed facts. The plaintiff obtained judgment against the defendants in 1902, and on execution issued the homesteads of defendants were allotted. In 1910 the defendants filed a petition in bankruptcy, in which proceeding the ·plaintiff proved his judgment as an ordinary unsecured debt, not asserting any lien upon the allotted homesteads. In the bankruptcy proceeding the homesteads of the defendants were again allotted, being the identical lands which had been allotted in the State court, and embracing all the lands owned by them. The trustee in bankruptcy made a return of no assets, and for this reason the reversionary interest in the homesteads was not sold in the bankruptcy proceedings. In 1911 the defendants received their discharge in bankruptcy, and thereafter one of the defendants, W. A. Hedgpeth, and his wife, sold and conveyed to one Surles the land which had been allotted him as a homestead by

the bankrupt court, the purchaser paying a part of the purchase money in cash and executing a mortgage upon the land to secure the balance. The other defendant, M. W. Hedgpeth, has not conveyed his homestead, but still occupies it.

After the discharge in bankruptcy the defendants offered to pay plaintiff 10 per cent of the amount of the judgment in compromise of their liability, if any, thereunder. Plaintiff accepted this offer, provided the 10 per cent was "net to him"; but before the defendants accepted this offer the plaintiff withdrew it.

The court ordered execution to issue against both defendants, and they excepted and appealed.

*J. A. McNorton for plaintiff.*
*McIntyre, Lawrence & Proctor for defendants.*

CLARK, C. J. The lien of the judgment is not barred by the statute of limitations, which is suspended and does not run against the docketed judgment during the life of the homestead. Revisal, 685, subsec. 5; Revisal, 686; *Farrar v. Harper,* 133 N. C., 71; *Wilson v. Lumber Co.,* 131 N. C., 163; *Formeyduval v. Rockwell,* 117 N. C., 320. "Even if the original judgment had become dormant, the right to enforce execution thereon upon the land subject to exemption arises on the termination of the homestead." *Rogers v. Kimsey,* 101 N. C., 564; *Jones v. Britton,* 102 N. C., 201.

Revisal, 686, was enacted 6 February, 1905. The homestead in favor of the defendant M. W. Hedgpeth was allotted thereafter, on 31 May, 1905, and in favor of W. A. Hedgpeth on 12 April, 1906. On 20 November, 1913, W. A. Hedgpeth and his wife conveyed the homestead allotted to him. The homesteads having been allotted to the defendants after the adoption of Revisal, 686, they received same vested with the rights as defined in Revisal, 686; and when W. A. Hedgpeth sold and conveyed the same he parted with his exemption, and the land, theretofore protected from sale "while occupied by him," by virtue of such exemption only, became subject to sale under the lien of the plaintiff's judgment. *Sash Co. v. Parker,* 153 N. C., 131. This has been cited as authority, *Fulp v. Brown,* 153 N. C., 533; *Davenport v. Fleming,* 154 N. C., 293; *Rose v. Bryan,* 157 N. C., 174; *Dalrymple v. Cole,* 170 N. C., 107; *Brown v. Harding,* 171 N. C., 690.

The acceptance of an offer must be in the terms in which it is made. The offer of the defendants to pay the plaintiff 10 per cent was not accepted, but a counter offer was made to accept "10 per cent net," which we understand to mean 10 per cent of the debt plus the full amount of the court costs, which had been paid by plaintiff. The plain-

tiff evidently meant to exact something more by requiring *10 per cent, net,* else he would simply have accepted the defendants' offer.   The defendants must have understood the plaintiff's counter offer as being something different, for they delayed acting on it until the plaintiff withdrew the proposition, as he had a right to do.

Nor is the plaintiff's lien barred by the discharge of the debt in bankruptcy.. "No title to exempt property passes to the trustee at all." Bankruptcy Act 1898, sec. 70 (a); 13 Remington on Bankruptcy, sec. 1024, p. 572.

"The discharge does not operate to cut off good and valid liens given or acquired for the debt, either a lien by contract or by legal proceedings, *nor to prevent their enforcement.*   It is purely personal to the bankrupt."   2 Remington Bankruptcy, sec. 2673, p. 1589.   Congress cannot destroy the plaintiff's lien against the homestead by the Bankruptcy Act.   *Kener v. LaGrange Mills,* 231 U. S., 205.

"In actions to try title to property, *or determine the validity of liens on property,* or interest therein, where no recovery of a debt is sought, the defendant may not interpose his discharge in bankruptcy.   The discharge bars debts, not ownership of property, whether such ownership be absolute, conditional, *or by way of lien,* whether it be ownership of the whole or merely partial ownership."   2 Remington on Bankruptcy, sec. 2668, p. 1587.

"The discharge bars all future legal proceedings for the enforcement of the debt or obligation discharged, except such as are by way of enforcement of a lien therefor not in itself invalid; but does not affect suits to determine the ownership of property, *or to enforce liens thereon."* 2 Remington on Bankruptcy, sec. 2668, p. 1588.

A discharge in bankruptcy does not affect the lien of a creditor where the lien was created more than four months before the petition in bankruptcy was filed.   "The effect of the discharge is personal · to the bankrupt, and does not affect any lawful lien, charge, or encumbrance existing on his property, but judgment may be specially entered thereon *in rem.*   The bankruptcy law was carefully designed to save all liens against property from being affected by the discharge, and its terms seem ample for that purpose."   *Paxton v. Scott,* 66 Neb., 385, citing Lowell on Bankruptcy, 314, 396, 397; *Long v. Bullard,* 117 U. S., 617.

To the same effect, *Philmon v. Marshall,* 116 Ga., 811; *Smith v. Zachary,* 115 Ga., 722; 1 Remington Bankruptcy, sec. 1032, p. 538; *Lockwood v. Bank,* 190 U. S., 294; *Kener v. LaGrange Mills,* 231 U. S., 205.

Under the Bankruptcy Act of 1898 the bankruptcy court is without authority or power to administer property set aside as exempt under

the Constitution of this State. *McKenney v. Chenney,* 118 Ga., 387. And the authorities are numerous to that effect.

When the defendants went into bankruptcy they could not take into it the reversion in their homestead, for it was practically the property of the plaintiff, certainly to the extent of his lien upon it. The defendant had no property therein, but merely an exemption from sale. *Joyner v. Sugg,* 132 N. C., 588, and cases cited; Revisal, 686. When the plaintiff proved his debt in bankruptcy, if he had received any dividend thereon (which he did not) it would have been applied to reduce the indebtedness for which he held a lien, unless he had an unsecured claim against the defendants, to which it should have been applied in preference. The bankruptcy court could not discharge the lien on the property. If the defendants had moved in the bankruptcy court to sell the reversionary interest, this could not have been done except subject to plaintiff's lien, under our statute forbidding the sale of the reversionary interest, for "the bankruptcy court is bound by the construction put upon the exemption laws by the highest courts of the State." 1 Remington on Bankruptcy, sec. 1042, p. 593. "No title to exempt property passes to the trustee at all." Bankruptcy Act 1898, sec. 70 (a); 1 Remington on Bankruptcy, sec. 1024, p. 572, above cited.

In *Blum v. Ellis,* 73 N. C., 293, relied on by defendants, neither the lienor nor the bankrupt seems to have objected to such sale, and the reversionary interest having been sold in bankruptcy without objection, as it seems, the Court held that while the bankrupt law did not divest a lien, when the property had been actually sold, it could not afterwards be subjected by the judgment creditor. The reasoning in that case would apply it only to property *in custodia legis,* which could be sold and proceeds applied to discharge the mortgages and other liens, but not to homesteads, since our statute forbids the reversionary interest to be sold. In *Blum v. Ellis* it is frankly stated in the opinion that the authorities were in conflict. Though cited since, we think it is authority only in cases where, as just stated, the property, being *in custodia legis,* can be sold for application to the lien, and not to the reversion in the homestead, which cannot be sold. In the latest case citing *Blum v. Ellis,* this Court intimates as much, *Laffoon v. Kerner,* 138 N. C., at bottom of p. 287.

In this case the judgment creditor did not prove his lien in bankruptcy, and the reversionary interest was not sold, and remains unaffected by the bankruptcy proceedings. The trustee reported that there were "no assets," and there was no decree or attempt to sell the reversion, on which the plaintiff had his lien. This lien not having been divested, the plaintiff was entitled upon the termination of the home-

stead exemption to have the property subjected to payment of his lien. If this termination had occurred by the death of the homesteader, leaving no minor children, execution would issue, and under Revisal, 686, it can in like manner be subjected when the exemption is terminated by a sale and transfer of the property by the homesteader. The reversionary interest in this case has not been conveyed by any sale thereof under decree in bankruptcy, as in *Blum v. Ellis,* where it was actually sold and the purchaser reconveyed to the homesteader. In that case the creditor might have appealed from the decree in bankruptcy, and, not having done so, was bound by such sale.

Moreover, *Blum v. Ellis* was decided under the Bankrupt Act of 1867, and this case falls under the Bankrupt Act of 1898. One material difference between the two is thus pointed out in the notes to *Paper Co. v. Wheeler* (N. D.), 42 L. R. A. (N. S.), at p. 293 : "From the provisions of the various acts as above set out it follows, as has been almost universally held, that real property liens existing for a proper length of time before the adjudication in bankruptcy are not affected by a discharge in such proceeding. The act of 1841 expressly preserves such liens, and it is the universally accepted rule that a discharge in bankruptcy does not, under the later acts, affect any liens except those specially stricken down by the acts themselves. In this connection, however, it should be remembered that the act of 1867 expressly destroys, except as therein otherwise provided, liens where the debt or claim was proved in bankruptcy, and, therefore, that a lien would be preserved only where the debt or claim was not submitted to the bankruptcy court; but this provision was not preserved in the act of 1898, under which proof may be made without impairing the lien."

In 3 R. C. L., Bankruptcy, sec. 143, citing the above case and others, it is said: "The setting apart of the homestead to a bankrupt and his subsequent discharge in bankruptcy do not relieve the property from the operation of a mortgage lien thereon obtained before the bankruptcy; and the same has been held to be true as regards judgment liens," citing *Paper Co. v. Wheeler, supra,* 42 L. R. A. (N. S.), 296, 297.

In this case the defendant has no interest in the reversion except by virtue of the allotment proceedings of the homestead, which had no effect save to exempt it from sale, and this exemption having now ceased, execution should issue against the property. Revisal, 686.

The order to issue execution against the homestead of the other defendant, M. W. Hedgpeth, who has not conveyed his homestead but still occupies it, was doubtless an inadvertence, and such execution should be recalled and set aside. As thus modified, the order of *Stacy, J.,* is

Affirmed.