**LAMBORN et al. v. WOODARD et al.**

Circuit Court of Appeals, Fourth Circuit.
July 5, 1927.

No. 2579.

1. **Sales ⬟22(4)—Conditional acceptance held not to result in contract.**

A telegram from plaintiffs to defendants, offering sugar at a stated price per pound, and a reply stating, "Ship two hundred bags * * *

hundred pound bags," *held* not to constitute a contract, but an offer accepted conditionally, and where plaintiffs did not accept the condition, but insisted that the sugar be accepted in barrels, which defendants could not handle in their trade, and to which they refused to agree, no contract resulted.

2. **Customs and usages ⬟17—Custom or usage may explain doubtful contract, but not contradict plain one.**

Custom or usage may be admissible to explain what is doubtful in a contract, but never to contradict what is plain.

3. **Trial ⬟139(1)—Judge has duty to direct verdict, where evidence for one party is so conclusive that he would set aside verdict in opposition to it.**

It is the duty of the trial judge to direct a verdict, where the evidence, though conflicting, is of so conclusive a character in favor of one party that, in the exercise of a sound judicial discretion, he would set aside a verdict in opposition to it.

In Error to the District Court of the United States for the Eastern District of North Carolina, at Elizabeth City; Isaac M. Meekins, Judge.

Action by Arthur H. Lamborn and others, partners as Lamborn & Co., against J. A. Woodard and W. D. Holmes, partners as J. A. Woodard-Holmes Company. Judgment for defendants, and plaintiffs bring error. Affirmed.

H. G. Connor, Jr., of Wilson, N. C. (Hitch, Denmark & Lovett, of Savannah, Ga., and Connor & Hill, of Wilson, N. C., on the brief), for plaintiffs in error.

J. C. B. Ehringhaus, of Elizabeth City, N. C. (Ehringhaus & Hall, of Elizabeth City, N. C., and H. R. Leary, of Edenton, N. C., on the brief), for defendants in error.

Before WADDILL and ROSE, Circuit Judges, and BAKER, District Judge.

BAKER, District Judge. Lamborn & Co., plaintiffs in error, plaintiffs below, were engaged, among other things, in buying and selling of sugar. James A. Woodard-Holmes Company, defendants in error, defendants below, were wholesale merchants located in the small town (population about 3,000) of Edenton, N. C.; their trade being largely rural and consisting in sales to small country stores. It will tend to a clearer understanding if they be designated by the positions they occupied in the trial court.

[1] The plaintiffs, under date of June 8, 1920, sent to defendants a telegram reading as follows:

"Savannah, Georgia, June 8, 1920.

"J. A. Woodard-Holmes Co., Edenton, N. C. Offer subject confirmation limited quan-

tity 'fine' granulated basis twenty-six cents less two per cent fob Savannah Refinery shipment sellers option one-third July or August one third August or September one third September or October cannot buy unless take all positions if interested wire quickly.

"Lamborn & Co."

To this the defendants replied on same day:

"Edenton, N. C., via Atlanta, Ga.

"Lamborn and Co., Savannah, Ga. Telegram received accept your offer ship two hundred bags fine granulated sugar hundred pound bags.

"J. A. Woodard-Holmes Co."

The next day (June 9, 1920) plaintiffs wired defendants as follows:

"Savannah, Ga., June 9—20.

"J. W. Woodard-Holmes Co., Edenton, N. C. Bought fifty seven barrels fine granulated basis twenty six cents less two per cent f o b Savannah refinery shipment sellers option one third July or August one third August or September one third September or October.

"Lamborn & Co."

There were no other communication or correspondence between the parties until June 22, when plaintiffs wrote defendants a letter, in which they refuse expressly to make shipments until and unless contract, claimed to have been theretofore forwarded, is duly signed by both parties.

Nothing further occurred between the parties until July 15—three weeks after the letter of June 22 and about five weeks after the date of telegrams—when plaintiffs wrote defendants a letter in which they sought to introduce two entirely new provisions into the alleged contract: (a) Change in date of delivery from July or August for first one-third to June or July; and (b) change the delivery of entire order in 100-pound bags as specified to 50 per cent. thereof in barrels weighing from 315 to 365 pounds, and further state: "If we fail to hear from you immediately we will take your silence as an acceptance of the assortment we desire to ship out."

On July 17 (apparently by return mail) defendants answered: "Very sorry that we can't handle your sugar. We have purchased from other places."

By subsequent correspondence plaintiffs expressed desire to ship but continued to insist upon 50 per cent. being accepted in barrels weighing from 315 to 365 pounds each.

Defendants never signed the contract demanded by plaintiffs in their letter of June 22, and never accepted any part of the sugar

in question. Plaintiffs offered the sugar for sale, and on November 2, 1920, sold it to Paradise & Rich, Atlanta, Ga., at eleven cents per pound, and sent defendants a statement showing balance due of $3,048.60 as a loss, which defendants declined to pay, and this action was instituted.

Practically the only question involved is whether or not a contract was made by the exchange of the three telegrams hereinbefore quoted. The plaintiffs insist that the acceptance, in the light of the allegations of article 7 of the complaint, "In the sugar trade, fifty seven barrels is the same as 200 bags," and the defendants insisting that they offered to purchase 200 bags of sugar weighing 100 pounds each, and no other sized parcels or packages, and that plaintiff was compelled to accept the offer in such terms to make a contract.

The learned judge below instructed the jury that no contract was made as alleged, that the defendants did not wrongfully refuse to accept and pay for the sugar in question, and that defendants were not indebted in any amount to the plaintiffs, and in compliance therewith the jury did so find.

There are four assignments of error, the latter two being formal, the case being brought here upon the first and second; the first being plaintiffs' exception to the charge of the court directing the jury to find there was no contract made as alleged, and the defendants did not wrongfully refuse to accept and pay for the sugar in question; the second being to the refusal of the court to submit the issues to the jury under proper instructions.

There is no question about the well-known and equally well-established proposition that "where a person offers to do a definite thing, and another accepts conditionally, or introduces a new term into the acceptance, his answer is a mere expression of willingness, and is not a definite agreement to perform." In order to construct a contract, there must be a proposal squarely assented to. There must be a meeting of two minds in one and the same intention, in order to constitute a contract, and an acceptance of an offer varying in terms is a rejection of the offer. Minneapolis & St. L. Ry. Co. v. Columbus Rolling Mill Co., 119 U. S. 149, 7 S. Ct. 168, 30 L. Ed. 376; Wilson v. Lumber Co., 180 N. C. 271, 104 S. E. 531; Rucker v. Sanders, 182 N. C. 607, 109 S. E. 857; Watters v. Hedgepeth, 172 N. C. 310, 90 S. E. 314; Clark v. Lumber Co., 158 N. C. 145, 73 S. E. 793; Cozart v. Herndon, 114 N. C. 252, 19 S. E. 158. 13 Corpus Juris, pp. 281, 282.

The defendants admittedly were small

town wholesalers (population of Edenton 3,000), their trade being limited to the rural district surrounding and sales to small country stores. The defendants testified, and it is uncontradicted, that their trade could not handle sugar in barrels, but that they could handle 100 pound bags advantageously.

A careful reading of the telegram from defendants to plaintiffs, dated June 8, expressly stipulates that deliveries are to be made in "100-pound bags." The word "bags" is twice used therein. Thus definite and exact emphasis is placed by defendants upon the conditions of their proposed acceptance, thereby injecting into the negotiations a distinct and entirely new condition, to wit, that the sugar should be shipped in 100-pound bags—a term which was vitally necessary to defendants' protection, in view of the nature of their trade and the market conditions then prevailing. It is manifest, therefore, that defendants' telegraphic answer was not, as contended by plaintiffs, an acceptance of the plaintiffs' offer, but was for "two hundred 100-pound bags."

By reference to plaintiffs' telegram of the next day, June 9, it is equally clear that plaintiffs did not accept the defendants' newly introduced stipulation, to wit, that the sugar should be in 100-pound bags, but sought to ignore it and attempted to interest defendants in an entirely different proposition "57 barrels," which is approximately the same amount of sugar.

[2] Plaintiffs practically conceded in their argument that their position would be fatal to their asserted cause of action, but for their allegations and alleged proof of a trade custom to regard 3½ bags as equivalent to a barrel of sugar.

"Custom or usage may properly be received to ascertain and explain the meaning and intention of the parties to a contract, whether written or parol, the meaning of which could not be ascertained without the aid of such extrinsic evidence, where the parties knew of the existence of the custom or usage, and contracted in reference to it." Robinson v. U. S., 13 Wall. 363, 20 L. Ed. 653.

There is no evidence in the record that defendants knew of such custom. Plaintiffs offered none, and defendants contradicted any suggestion of such knowledge on their part. But, assuming the establishment of a custom by the testimony in this case, it is uniformly held that custom will be only considered where there is ambiguity in the contract for the purpose of explaining the same, but never for the purposes of making a contract or

contradicting the express terms of the writing. 17 Corpus Juris 499 et seq., pp. 500–508; 27 Ruling Case Law, pp. 172, 173; Brown Chemical Co. v. Adkins, 91 N. C. 389.

Usage may be admissible to explain what is doubtful; it is never admissible to contradict what is plain. Assuming that the plaintiffs at the time of the exchange of telegrams had in mind the trade custom to which they refer, it is plain the defendants had in mind only deliveries in 100-pound bags; hence there never was a meeting of minds sufficient to result in a binding contract. The defendants had injected in their telegram a new element into the plaintiffs' proposition, which was never accepted by the plaintiffs; the telegrams in question were merely a series of offers unaccepted, and therefore no contract resulted.

Assuming that a valid contract resulted from the exchange of telegrams and the following correspondence, by reference to plaintiffs' letters of July 15 they attempted to change the period in which defendants were to receive the first one-third to the months of June or July, instead of July and August, as originally stipulated, and in the same letter attempted to rid themselves of the obligation to ship the sugar in assortment as required by defendants by insisting "that only 50 per cent of this quantity will be available in bulk bags, the balance in barrels at once." The very next paragraph of the letter stipulates: "If we fail to hear from you immediately, we will take your silence as an acceptance of the assortment we desire to ship out."

It is manifest the defendants were confronted with a demand that they receive 50 per cent. of the sugar in 350-pound barrels, which was absolutely unsuited to their trade requirements, when we take into consideration the undisputed facts with respect to the nature of defendants' trade, the market conditions then prevailing, and the difficulty of a country merchant handling sugar upon a rapidly declining market in bulk sizes beyond his requirement.

[3] Bill of exception No. 1 challenges the ruling of the trial court in directing a verdict for the defendant. It is the duty of the trial judge to direct a verdict for one of the parties at the close of the evidence in that class of cases in which the evidence is conflicting but of so conclusive character that the court, in the exercise of a sound judicial discretion, would set aside a verdict in opposition to it. Small Co. v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597; Chicago, Milwaukee & St. P. Ry. Co. v. Coogan, 271 U.

S. 472, 46 S. Ct. 564, 70 L. Ed. 1041; Atchison, T. & S. F. Ry. Co. v. Wyer (C. C. A.) 8 F.(2d) 30. We are of 'opinion that the evidence as set forth in the record conclusively establishes the wisdom of the learned trial court in directing a verdict for the defendants.

Bill of exception No. 2 relates to the refusal of the trial court to submit the issues to the jury under proper instruction. We are of opinion the trial court was fully justified under the facts of this case in taking the case from the jury and directing a verdict.

It follows we find no reversible error in this case of which plaintiffs may complain. Affirmed.

The late Judge ROSE, who sat in the hearing of this case, concurred in the decision that the judgment 'of the District Court should be affirmed, but died before this opinion was prepared.