JASPER STOKES AND WIFE, REBA STOKES; HATTIE C. STOKES; GLADYS STOKES McLAWHORN; LYMAN G. STOKES AND WIFE, MARY STOKES; BERNICE L. STOKES AND WIFE, EDNA EARL STOKES, AND ELEANOR JEAN OSTRANDER AND HUSBAND, ALFRED OSTRANDER, v. EUGENE SMITH AND WIFE, RUTH W. SMITH; KIRBY SMITH AND WIFE, CLARA SMITH; RALPH SMITH AND WIFE, MARY A. L. SMITH; .CORA BOB SMITH TURNAGE; LARRY W. SMITH, JR., AND WIFE, DARLENE SMITH, AND DOROTHY W. SMITH AND ROY TURNAGE, JR.

BLANEY McLAWHORN MOORE, JENNIE NICHOLS, DOROTHY CAY-TON, NINA DEAVER, BEN McLAWHORN, ED McLAWHORN, AND EUGENE McLAWHORN, INTERVENORS.

(Filed 16 October, 1957.)

**1. Appeal and Error §§ 28, 37—**

Where plaintiff appellants have served no case on appeal, filed no assignments of error and no brief or appeal bond, appellee's motion to dismiss the appeal will be allowed.

**2. Husband and Wife § 12c—Conveyance by husband and wife to third person and reconveyance to husband do not establish as matter of law attempt to circumvent G.S. 52-12.**

The mere fact that husband and wife conveyed her land to a third·person, without the examination of the wife, and that such third person, on the following day, conveyed the land to the husband for the same recited consideration, is insufficient to establish conclusively that the conveyances were for the purpose of transferring the wife's title to the husband without complying with G.S. 52-12, but whether the conveyances were executed to ·accomplish an illegal purpose should be established by verdict of jury or finding of the court, and where the parties stipulate the facts without stipulating that the transaction was not *bona fide* for a proper purpose, the husband acquires title.

**3. Same—**

Where a deed purports to be from husband and wife to a third party, the burden is upon the party asserting it to prove that the conveyance was made to such third party, who reconveyed to the husband, for the purpose of circumventing G.S. 52-12.

**4. Homestead § 4a—**

Sales under execution to provide funds to pay a debt, and sales under judicial decree for such purpose, are void unless the debtor's homestead is laid off in accordance with mandatory provision of statute. G.S. 1-371, 372, 375, 376, 379, 386.

**5. Same—**

Land allotted as the homestead is exempt from levy or sale under execution during existence of the homestead right.

**6. Homestead § 7—**

> To make a valid conveyance of allotted homestead, the wife of the home-steader must join in the conveyance.

**7. Same—**

> Land allotted as the debtor's homestead is not subject to sale under judicial process so long as it is owned, occupied or beneficially enjoyed by the homesteader.

**8. Same—**

> A mortgage of allotted homestead is not such sale as to subject the land to sale under execution.

**9. Same—**

> When the homesteader voluntarily parts with his legal title and the right to use, occupy and enjoy his allotted homestead, he has no right to prohibit the sale of that land under judicial process, though he may convey it subject to any reservations, exceptions or conditions which he deems advisable.

**10. Same: Bankruptcy § 2—**

> Since the judgment debtor has the right to sell the land allotted to him as a homestead subject to his right to use and occupy it as a homestead, it is property which a trustee in bankruptcy may, but does not have to, take into possession and administer.

**11. Same—**

> The term "homestead rights" has different meanings when applied to different factual situations: homestead rights are protected from the force of judicial process; but the homesteader may voluntarily dispose of property allotted as his homestead for the purpose of satisfying his debts, in which case he is presumed to have exercised his full powers of disposal and to have retained only the right of occupancy for the period prescribed by the Constitution.

**12. Appeal and Error §§ 49, 55—**

> Where facts stipulated by the parties are insufficient to determine the law applicable to the case, the cause must be remanded.

APPEAL by plaintiffs and intervenors from *Burgwyn, E. J.,* 27 May, 1957 Term of PITT.

Plaintiffs brought this action to recover possession and to be adjudged the owners of a parcel of land in Pitt County containing five acres allotted to Ed McLawhorn as his homestead.

Defendants other than Darlene Smith answered. They admitted possession of the land, denied plaintiff's ownership, and for a further defense and by way of affirmative relief asserted their ownership under a chain of title set out in the further answer. They pray that they be adjudged the owners of the land.

Thereafter Ben McLawhorn, Blaney McLawhorn Moore, Ed McLawhorn, Jr., and Eugene McLawhorn sought and were granted permission to intervene and assert their right to the land in controversy. They filed pleadings alleging ownership of the land and damages for the alleged wrongful possession.

Thereafter Nina Deaver, Dorothy Cayton, and Jennie Marie Nichols sought and were granted permission to intervene and assert their title to the land in controversy. They filed a pleading alleging ownership and damages for the asserted wrongful detention.

Plaintiffs and defendants answered the pleas of the intervenors. They denied the claims made by the intervenors.

The parties waived a jury trial and stipulated the facts which may be summarized as follows:

(1) Plaintiffs are the widow and heirs of B. F. Stokes or the husbands or wives of said heirs.

(2) Answering defendants are the heirs of R. W. Smith and wife, Cora Smith, or the husbands or wives of said heirs.

(3) Nina Deaver, Dorothy Cayton, and Jennie Marie Nichols are the only children of Ed McLawhorn and his first wife, Mary Jones McLawhorn. Both parents are deceased.

(4) Ben McLawhorn, Ed McLawhorn, Jr., Eugene McLawhorn, and Blaney McLawhorn Moore are the only children of Ed McLawhorn, deceased, and his second wife, Annie McLawhorn.

(5) The land in controversy is part of a large tract inherited by Mary Jones McLawhorn, first wife of Ed McLawhorn, from her father, Ben A. Jones.

"SIXTH: That by instrument of record in Book J-9, page 529, Pitt County Registry, dated 6 April, 1909, Mary McLawhorn, wife of Eddie McLawhorn, executed and delivered to said Eddie McLawhorn a purported deed of conveyance embracing a tract of land which included the five acres in controversy, reserving 'my life estate and that of any of our living issue that may be born to us.'

"Said deed herein referred to was void for lack of acknowledgment and probate as prescribed by law and required by NC GS 52-12.

"SEVENTH: That by instrument of record in Book G-10, page 71, Pitt County Registry, dated 4 October, 1912, recorded 5 October, 1912, at 9:00 A.M., Eddie McLawhorn and wife, Mary A. McLawhorn, (also known as Mary Jones McLawhorn) purportedly conveyed to Exum Dail the same tract of land described and referred to in paragraph 6 above, for a recited consideration of $100. The certifying officer did not certify his findings and conclusion under NC GS 52-12.

"EIGHTH: That by deed of record in Book G-10, page 63, Pitt County Registry, dated 5 October, 1912, recorded at 9:00 A.M. October 11, 1912, Exum Dail and wife, Maud Dail, reconveyed said lands

described in paragraphs 6 and 7 above to Eddie McLawhorn for a recited consideration of $100.00."

(9) In actions entitled "Ed McLawhorn and others v. J. H. Byrum" and "Bank of Ayden v. Ed McLawhorn," commissioners were appointed by the Superior Court of Pitt County and directed to sell a described tract of land "containing 62½ acres, more or less, and known as part of the B. A. Jones land, save and excepting that certain 12 acres of said land described in a certain mortgage from Ed McLawhorn to J. H. Byrum, and subject to the homestead rights of the said Ed McLawhorn."

(10) The commissioners made the sale in October 1926 as directed by the court "subject only to the homestead rights of the said Ed McLawhorn."

(11) Prior to the sale "the homestead of the said Ed McLawhorn was laid off as provided by law and as appears in Judgment Docket #29 at page 247, said homestead being described as follows:" Then follows a description by metes and bounds of the land in controversy.

(12) The commissioners executed a deed to R. W. Smith. It describes a tract of land, reciting it contains 62½ acres, and concludes: ". . . saving and excepting that certain 12 acres of said land described in a certain mortgage from Ed McLawhorn to J. H. Byrum and subject to the homestead rights of said Ed McLawhorn."

(13) R. W. Smith, the purchaser, took possession of the whole tract "except that part thereof which was set apart as a homestead to the said Ed McLawhorn."

R. W. Smith and wife conveyed the property purchased from the commissioners to B. F. Stokes. The Smith deed contains a description identical with the description in the deed from the commissioners to him, and his deed refers to the commissioners' deed. In 1936 Stokes and wife reconveyed to R. W. Smith and wife. The description, after listing the adjoining landowners, proceeds: ". . . saving and excepting from this conveyance the homestead as set apart and allotted to Ed McLawhorn as will appear by reference to Judgment Docket No. 29, Case No. 898, and being the identical land deeded to B. F. Stokes by R. W. Smith and wife, upon which the said B. F. Stokes now resides." Upon the execution of this deed, Smith and wife went into possession of all the land except the area set apart as the homestead.

Ed McLawhorn died 11 July 1930. His youngest child became 21 on 19 June 1951. After June 1951 plaintiffs took possession of the area allotted as the homestead. They were evicted by defendants.

Upon the stipulated facts the court adjudged that the defendants, heirs of R. W. Smith, were the owners of the five acres which had been allotted as the homestead of Ed McLawhorn. Plaintiffs and intervenors excepted and gave notice of appeal.

*R. B. Lee* for Intervenors *Blaney McLawhorn Moore, Ben McLawhorn, Ed McLawhorn (Jr.), and Eugene McLawhorn,* appellants.

*L. W. Gaylord, Sr., L. W. Gaylord, Jr.,* and *M. E. Cavendish* for Intervenors *Nina Deaver, Dorothy Cayton,* and *Jennie Marie Nichols,* appellants.

*Albion Dunn* for defendant appellees.

RODMAN, J. Plaintiffs have served no case on appeal, have filed no assignments of error, and have filed no brief or appeal bond. Defendants' motion to dismiss plaintiff's appeal is allowed.

The children of Mary Jones McLawhorn contend that the facts stipulated establish as a matter of law that Exum Dail was a mere conduit to pass the title of Mrs. McLawhorn's property to her husband, and since the deed from Mrs. McLawhorn and husband to Dail was not probated as required for a valid conveyance from wife to husband (G.S. 52-12), he acquired no title to the property, but upon her death was a tenant by courtesy consummate. Grant the soundness of the premise, and the conclusion follows. *Pilkington v. West, ante,* p. 575; *Ingram v. Easley,* 227 N.C. 442, 42 S.E. 2d 624. But the facts stipulated do not support the premise. Whether Dail was a *bona fide* purchaser or a strawman was a question of fact. The burden rests upon those asserting the invalidity of the deed to establish that it is not in fact what it purports to be. *McCullen v. Durham,* 229 N.C. 418, 50 S.E. 2d 511. The mere fact that on the following day the property was conveyed to the husband and the consideration recited in each deed was the same is not sufficient to conclusively establish that Dail was a mere means to accomplish an illegal purpose. Intervenors had a right to insist on findings of fact by a jury or by the court, but here they have stipulated the facts. It is not stipulated as a fact that the transaction was not *bona fide* and for a proper purpose. We attach no importance to the use of the word "reconvey" in connection with the conveyance from Dail to McLawhorn. The parties did not, on the oral argument or by brief, suggest it meant more than a transmission of a title from Dail to Ed McLawhorn.

Having concluded that title was vested in Ed McLawhorn, we are called upon to determine, if we can from the stipulated facts, the meaning and effect of the phrase "subject to the homestead rights of the said Ed McLawhorn" used in the decree appointing commissioners and in the deed from the commissioners to Smith for the McLawhorn property.

The facts stipulated do not disclose all of the parties or the character or purpose of the actions in which the commissioners were appointed and the order of sale was made. Was Mrs. McLawhorn a party? Were the commissioners appointed to consummate a voluntary disposi-

tion of the land by Ed McLawhorn? If so, was his wife a party to the conveyance? Were the actions in which the decree was entered merely for the purpose of declaring a debt and a lien on McLawhorn's property against which he could assert his homestead exemption and a postponement of the sale of the land allotted as his homestead until the termination of that right?

Defendants strenuously insist that the question has been definitely settled by *Joyner v. Sugg,* 132 N.C. 580; *Davenport v. Fleming,* 154 N.C. 291, 70 S.E. 472; *Kirkwood v. Peden,* 173 N.C. 460, 92 S.E. 264; and *Hicks v. Wooten,* 175 N.C. 597, 96 S.E. 107. Each of those cases dealt with voluntary conveyances made by the property owner and the scope and effect of language used by the grantor. It is not here stipulated that the decree under which the sale was made was entered to consummate and give effect to a voluntary conveyance made by the property owner; and because the facts stipulated do not establish the controlling effect of those cases, we deem it necessary to point out what we think are now well-established principles relating to the homestead.

Statutory provision was made for the exemption from sale under execution of certain kinds of property of an impoverished debtor as early as 1773. Rev. Stat. 1837, c. 45, s. 7; Rev. Code 1854, c. 45, s. 7, 8, 9, 10. It was not until the adoption of the Constitution in 1868 that we wrote into our organic law the right of a judgment debtor to claim as exempt from sale under execution both real and personal property. These constitutional provisions and the statutes enacted to give effect thereto have in the past been fruitful sources of litigation.

The Legislature in 1869 enacted a statute requiring the allotment of the homestead before a levy under execution. c. 137, P.L. 1869. Portions of that Act now appear as G.S. 1-371, 372, 375, 376, 379, and 386. The statute, by express language, commands the sheriff to lay off a homestead to the judgment debtor before any levy is made. The provisions of the statute are mandatory. Sales made under execution merely for the purpose of providing funds to pay a debt are, when the homestead of the judgment debtor has not been allotted, void. *Poe v. Hardie,* 65 N.C. 447; *Taylor v. Rhyne,* 65 N.C. 530; *Waters v. Stubbs,* 75 N.C. 28; *Mebane v. Layton,* 89 N.C. 396; *McCracken v. Adler,* 98 N.C. 400; *Morrison v. Watson,* 101 N.C. 332; *Mobley v. Griffin,* 104 N.C. 112; *Ferguson v. Wright,* 113 N.C. 537; *Williams v. Johnson,* 230 N.C. 338, 53 S.E. 2d 277.

A sale of decedent's land by judicial decree for the purpose of making assets to pay his debts is not within the letter of the statute but is clearly within the spirit of the law. Hence it has been consistently held that a homestead, where the right exists, must be allotted before lands of the decedent can be sold to pay his debts. *Trust Co. v. McDearman,*

213 N.C. 141, 195 S.E. 531; *Fulp v. Brown,* 153 N.C. 531, 69 S.E. 612; *Shields v. Allen,* 77 N.C. 375; *Hinsdale v. Williams,* 75 N.C. 430.

The constitutional right of a debtor to a homestead and the statutory right to have it allotted before levy and sale were not controversial. But when the allotment was made, what should the sheriff sell? Should he sell the entire tract subject only to the right of the judgment debtor to use and occupy the allotted area for his life and the life of his widow or the minority of his children or should the officer exclude from the sale the entire area allotted as a homestead and sell only the remaining land, if any, of the judgment debtor? The Legislature in 1870 provided the answer. It enacted: "It shall not be lawful to levy or sell under execution for any debt the reversionary interest in any land included in a homestead until after the termination of the homestead interest itself: *Provided,* that the statute of limitations shall not run against any debt owing by the holder of the homestead affected by this section, during the existence of his interest in the homestead." c. 121, s. 1, Laws 1869-70 (Battle's Rev. 1873, c. 55, s. 26).

As early as 1871 the Court said: "Only the interest of a debtor in land in excess of the homestead can be levied upon and sold; and this excess must be ascertained by appraisers properly appointed." *Taylor v. Rhyne, supra.* It explained the reason for the legislation, saying: "That act (c. 121, Laws 1870) was intended to protect the owner of a homestead by the purchaser against any vexatious litigation which might be instituted by the purchaser of a reversionary interest. Such interest, if sold, would yield but little to an execution creditor in satisfaction of his debt, and in nine cases out of ten would be purchased by speculators." *Poe v. Hardie, supra.* In this connection it was said in *Kirkwood v. Peden, supra:* "The only reason for keeping a judgment in full force and effect during the existence of the homestead is to subject the reversionary interest to its payment when the homestead expires, as such interest cannot be sold under execution during the life of the homestead." As noted in *Mebane v. Layton, supra,* s. 1 of the Act of 1870 was not brought forward in the Code of 1883. The reason for the omission is not clear.

Divergent views are expressed in the older cases with respect to the basis for the exemption from levy and sale, during the existence of the homestead right, of the lands allotted as a homestead. Some of the cases predicate this exemption on the statute; others predicate the right on the Constitution itself. No matter what the basis for the exemption, the cases are in agreement that the land allotted as the homestead is exempt from levy and sale under execution during the existence of the homestead right. *Lambert v. Kinnery,* 74 N.C. 348; *Hinsdale v. Williams, supra; Gheen v. Summey,* 80 N.C. 187; *Mebane v. Layton, supra; Markham v. Hicks,* 90 N.C. 204; *Vanstory v. Thornton,* 112 N.C. 196.

*Fulp v. Brown, supra; Crouch v. Crouch,* 160 N.C. 447, 76 S.E. 482; *Brown v. Harding,* 171 N.C. 686, 89 S.E. 222; *Cheek v. Walden,* 195 N.C. 752, 143 S.E. 465; *Miller v. Little,* 212 N.C. 612, 194 S.E. 92; *Cleve v. Adams,* 222 N.C. 211, 22 S.E. 2d 567; *Sample v. Jackson,* 225 N.C. 380, 35 S.E. 2d 236.

Though there was agreement on this aspect of the law relating to homestead, from the time of the adoption of the Constitution until after the turn of the century, sharp disagreement often existed among members of the Court in respect to an interpretation of s. 8 of Art. X of the Constitution, providing: ". . . no deed made by the owner of a homestead shall be valid without the signature and acknowledgment of his wife." Did that section require the signature of the wife, when no homestead had been allotted, in order that the husband could validly convey it? During the same period, members of the Court often expressed equally divergent views on the question of the right of a debtor to assert exemption from levy and sale pursuant thereto of a tract of land which he had voluntarily conveyed. Did the right which a judgment debtor grantor had to claim homestead in a particular tract of land follow the land and inure to the benefit of the grantee during the life of the debtor grantor and the minority of the children? If so, was the debtor grantor entitled also to claim his homestead in other lands which he had not sold?

*Adrian v. Shaw,* 82 N.C. 474, decided at the Spring Term 1880, held that a judgment debtor was, by the Constitution, entitled to a homestead; and when a sale of his property was made without allotting his homestead the sale was void and the purchaser acquired no title to the land even though the judgment debtor had subsequently sold the land. *Ashe, J.,* speaking for a unanimous Court, said: "It may be that the owner of a homestead who leaves the State and changes his domicile should be considered as having abandoned his homestead. But the law, when it authorizes one to sell his homestead, would be untrue to itself and the obligations of justice if it were to allow the owner to sell it, receive a full and fair price, and then leave it subject, in the hands of his vendee, to the satisfaction of his debts. We cannot believe that to be the law."

The reasoning and conclusion reached in *Adrian v. Shaw, supra,* was adopted in a number of subsequent cases. Illustrative: *Simpson v. Houston,* 97 N.C. 344; *Vanstory v. Thornton, supra (Clark, J.,* later *C. J.,* dissented) ; *Gardner v. Batts,* 114 N.C. 496 (again *Clark, J.,* dissented) ; *Stern v. Lee,* 115 N.C. 426 (*Clark* and *McRae* dissented) ; *Brown v. Harding, supra.* (This case, though decided in 1916, applied the law as the Court interpreted it, to transactions occurring prior to 1905.)

In *Fleming v. Graham,* 110 N.C. 374, the Court held that where a judgment debtor made a valid conveyance of his land, it was a waiver of his right to have his homestead assigned in that land. There was no dissent in that case.

The divergent views of the members of the Court were brought sharply into focus in *Thomas v. Fulford,* 117 N.C. 667, where each of the five members of the Court filed an opinion. The problem created by the divergent views expressed in *Thomas v. Fulford, supra,* was emphasized when *Joyner v. Sugg,* 131 N.C. 324, was decided at the Fall Term 1902. Again five separate opinions were filed. No common ground could be found on which a majority could stand. The case revolved around the right of a property owner in debt to convey his land without the joinder of his wife and the estate and property acquired at a foreclosure sale when the conveyance was made "subject to the reserved homestead right" of the mortgagor. A majority of the Court reached the conclusion that a conveyance by one in debt without the joinder of his wife and without the allotment of the homestead was void as to such portion of the land as represented the value of the homestead, to wit, $1,000.

The membership of the Court changed with the election in 1902. A petition to rehear was filed, granted, and opinion rendered by three judges reversing the conclusion reached on the former hearing. *Douglas, J.,* filed a dissenting opinion. *Connor, J.,* having been of counsel, did not sit. This opinion was filed in May after the Legislature had adjourned. *Walker, J.,* speaking for the Court, said: "If it was intended by the framers of the Constitution that all of the interest of the owner in the homestead land should be exempted from sale, it was not necessary to pass the act of 1869-'70, as the Constitution sufficiently protected it.

"It was only upon the supposition that there was an interest in the exempted land which was left exposed to sale that made it necessary to pass the said act. That statute was remedial in its nature. The old law was the Constitution, which declared that a certain part of the land should be set apart and to it be attached a right or privilege of exemption only, thereby rendering it liable to sale, subject to that exemption. The mischief was that sales under execution had been and were then being made, which were recognized as valid by the courts and which were considered as injurious to the homesteader; and to remedy this evil, the statute was enacted."

The Legislature met in January 1905 with this confused and apparently unstable state of law relating to homesteads confronting it. Manifestly, legislation was necessary. On 16 January 1905, S.B. 116 was introduced to amend s. 505 of the Code of 1883 which now appears as G.S. 1-375. That bill, with an amendment inserted in the House to

the effect that it should not have retroactive effect, became the law on 6 February 1905. It now appears as G.S. 1-370. If one is to read the amendment intelligently, he should read first G.S. 1-371, then 375, and then 370; and when so read and compared with the Act of 1870, it is manifest that the Legislature intended to provide: (1) It is mandatory that the homestead be allotted before proceeding with a sale of the judgment debtor's lands to satisfy his debts by judicial process. This is demonstrated by *Williams v. Johnson, supra; Trust Co. v. McDearman, supra,* and other cases cited. (2) To make a valid conveyance of the allotted homestead, the wife of the homesteader must join in the conveyance. *Dalrymple v. Cole,* 170 N.C. 102, 86 S.E. 988, and cases cited; *Hall v. Dixon,* 174 N.C. 319, 93 S.E. 837; *Cheek v. Walden, supra.* (3) The land so allotted is not subject to sale under judicial process so long as owned, occupied, or beneficially enjoyed by the homesteader. *Assurance Society v. Russos,* 210 N.C. 121, 185 S.E. 632; *Watters v. Hedgpeth,* 172 N.C. 310, 90 S.E. 314; *Williams v. Johnson, supra.* (4) A mortgage of the allotted homestead is not such sale as subjects it to sale under execution. *Cleve v. Adams, supra.* (5) When the owner voluntarily parts with his legal title and the right to use, occupy, and enjoy a particular tract of land which has been allotted as his homestead, he has no right to prohibit the sale of that land under the judicial process, *Sash Co. v. Parker,* 153 N.C. 130, 69 S.E. 1; *Rose v. Bryan,* 157 N.C. 173, 72 S.E. 960; *Duplin County v. Harrell,* 195 N.C. 445, 142 S.E. 481; *Land Bank v. Bland,* 231 N.C. 26, 56 S.E. 2d 30, thus overruling *Adrian v. Shaw, supra,* and that line of cases. He may convey subject to any reservations, exceptions, or conditions which he deems advisable, and when so made in his deed, the provisions therein contained will be interpreted as they would in any other deed. (6) Since the judgment debtor has a right to sell the land allotted to him as a homestead, subject to his right to use and occupy it as a homestead, it is property which the trustee in bankruptcy may, but does not have to, take into possession and administer. 11 U.S.C.A. 110; *Murray v. Hazell,* 99 N.C. 168; *Williams v. Scott,* 122 N.C. 545; *Watters v. Hedgpeth, supra; Patrick v. Beatty,* 202 N.C. 454, 163 S.E. 572; *Sample v. Jackson, supra.*

"The same words or those nearly similar, used under different circumstances and contexts, may express different intentions." *Coffield v. Peele, ante,* p. 661.

We think the term "homestead rights" has different meanings when applied to different factual situations. One situation requires the ascertainment of the rights which can be claimed against judicial process; the other, the ascertainment of what a party retains when he voluntarily conveys his property.

When a judgment creditor uses the force of judicial process to collect the obligation owing to him, his debtor has a right to have a portion of his land allotted for his use and occupancy. Coupled with and as an incident to this right to use and occupy is the right provided by the statute to postpone the sale of the area so allotted until the right of occupancy has terminated. These are the homestead rights protected against the force of judicial process. A judicial sale subject to these rights passes no title to the allotted land. *Barrett v. Richardson,* 76 N.C. 429. Sound reason exists for the exclusion. *Poe v. Hardie, supra.*

On the other hand, when a property owner voluntarily disposes of his property for the purpose of satisfying his debts and subject to his homestead right, he is presumed to have exercised his full power of disposal and to have retained only the right of occupancy for the period prescribed by the Constitution. No question is presented of any violation of his legal rights. *Joyner v. Sugg, supra; Davenport v. Fleming, supra; Kirkwood v. Peden, supra; Hicks v. Wooten, supra;* involve the construction of voluntary conveyances.

The facts stipulated are insufficient to determine the law applicable to the case. Hence a remand is necessary for proper development of the facts. *Guilford College v. Guilford County,* 219 N.C. 347, 13 S.E. 2d 622.

The appeal of plaintiffs is
Dismissed.
As to the intervenors, the cause is
Remanded.