W. T. CARSTARPHEN v. EZELLE CARSTARPHEN AND JOHN RANDOLPH CARSTARPHEN.

(Filed 13 April, 1927.)

1. **Sales—Execution—Homestead — Excess — Judgments—Evidence — Statutes.**

Where the controversy in the action is made to depend upon the issue arising from the pleadings and evidence introduced upon the trial between the purchaser at an execution sale and the heir at law of the judgment debtor, as to whether the homestead allotted in the action embraced the home tract of the deceased, or whether it included an adjoining tract of land of the deceased judgment debtor, the original return of the appearance, or copy thereof on file in the proceedings, to lay off the homestead found in the judgment will control, and the further proceedings in the matter are competent evidence, without the necessity of registration. C. S., 731.

2. **Homestead—Allotment Less Than $1000—Irregularity of Appraisement—Statutes.**

An allotment of a homestead to the value of $800, laid off under execution, does not render the allotment void, especially when the plaintiff in an independent action contesting its validity has introduced the former record containing the proceedings for laying off the homestead, and contends on appeal that it was erroneously admitted in the trial court. C. S., 740.

3. **Instructions—Directing Verdict—Evidence—Excess Over Homestead —Execution—Sales—Burden of Proof.**

Where the purchaser of land sold under execution contends that he is the owner by virtue thereof of the *locus in quo* in the present action as the surplus after laying off the homestead of the defendant's predecessor in title, the burden of proof is upon him, and a directed verdict in his favor is properly denied in the trial court, and he must depend upon the strength of his own title and not the weakness of that of the defendant in ejectment.

4. **Appeal and Error—Presumptions—Burden of Proof.**

On appeal to the Supreme Court, the presumption is in favor of the correctness of the trial in the Superior Court, with the burden on appellant to show error.

5. **Same—Prejudicial Error.**

In order for appellant to be awarded a new trial on appeal to the Supreme Court, it must not only be made to appear that technical error has been committed in the lower court, but that it was of a character so prejudicial to appellant that a different verdict might otherwise reasonably have been rendered. As to whether an estoppel should have been pleaded in this action of ejectment, *quære*.

6. **Instructions—Evidence—Directing Verdict.**

Where, by every reasonable intendment, the evidence and admissions on the trial should be resolved in appellee's favor, a directed verdict thereon against the defendant is not erroneous.

APPEAL by plaintiff from *Calvert, J.,* and a jury, at November Term, 1926, of NORTHAMPTON.   No error.

Facts will be stated in the opinion.

*A. C. Gay and McMullan & LeRoy for plaintiff.*
*Burgwyn & Norfleet and Travis & Travis for defendants.*

CLARKSON, J.   (1) Captain John R. Carstarphen was first married to Willie E. Carstarphen, and had by this marriage one son, Dr. W. T. Carstarphen, the plaintiff in this action.   She died in 1909 intestate. (2) After his first wife's death, he married Ezelle Carstarphen, on 11 November, 1911.   By this marriage he had one son, John Randolph Carstarphen, born in 1912.   Both his second wife and youngest son, who is a minor defended by guardian *ad litem,* are defendants in this action.

The action is brought by half-brother against a minor half-brother and his father's widow by the second marriage, to recover certain land alleged to have belonged to his mother, Willie E. Carstarphen.   Capt. John R. Carstarphen was a man of considerable wealth, but engaged in the mercantile business, and about 1887 became heavily involved in debt.   Many judgments were taken against him.   At the time he owned real estate consisting of:

(1) Dr. William Carstarphen's (father of John R. Carstarphen) home place—about 570 acres.

(2) The "Bass tract," about 100 acres.

(3) "Sykes Old Store Place," about 250 acres (90 acres conveyed to W. W. Smith, over which there is no dispute).

(4) John R. Carstarphen's "home place."

After the death of Dr. William Carstarphen, the tracts above, one, two and three, which belonged to Dr. William Carstarphen, were acquired by John R. Carstarphen, who died 13 October, 1922, leaving a last will and testament, in which he bequeathed and devised his property to the defendants.

This is an action of ejectment, brought by plaintiff to recover three tracts of land: (1) John R. Carstarphen "home place"—the part in excess of the homestead; (2) the "Bass tract"; (3) the "Sykes Old Store Place."   The plaintiff claims title by virtue of sale under sundry executions issued 5 May, 1887, on certain judgments against John R. Carstarphen.   At the sale the land was purchased (after the homestead was allotted to John R. Carstarphen on 11 May, 1887) by P. H. Booth.   The sale was made and the deeds were dated 1 August, 1887, from M. F. Stancell, sheriff, to P. H. Booth, and P. H. Booth and wife, years afterwards, on 31 March, 1893, and 6 October, 1893, conveyed the land to W. (Willie) E. Carstarphen, wife of John R. Carstarphen, who died intestate in 1909, leaving plaintiff her only son and heir at law.

The issues submitted, first three only material, and the answers thereto, were as follows:

"1. Is the plaintiff the owner and entitled to the possession of the tract of land known as the 'Sykes (Old) Store Place,' described in subsection 3 of section 1 of the complaint? Answer: 'Yes.'

"2. Is the plaintiff the owner of and entitled to the possession of the John R. Carstarphen Home Place, described in subsection 2 of section 1 of the complaint, excepting therefrom the land allotted to the said John R. Carstarphen as a homestead? Answer: 'No.'

"3. Is the plaintiff the owner and entitled to the possession of the Bass tract of land, described in subsection 1 of section 1 of the complaint? Answer: 'No.'"

We consider now the controversy between the parties: Plaintiff introduced two deeds, duly recorded, from M. F. Stancell, sheriff, dated 1 August, 1887, to P. H. Booth, the land described as follows:

First deed—(a) One certain tract of land lying in Northampton County, aforesaid, on which John R. Carstarphen resides, bounded by the lands of W. H. Colins, Miss Julia Hodges, G. G. Daniel, and others, containing 275 acres, excepting therefrom the homestead of said Carstarphen, which was recently set apart to him, consisting of 200 acres of said tract and the dwelling thereon.

(b) Also one other tract in said county known as the "Sykes Old Store Place," bounded by the lands of Martha Moody, J. R. Roberson, and others, containing 250 acres, more or less.

Second deed—(a) One tract of land lying in said county, bounded by the lands of Martha Moody, by the public road, and by the lands of Mrs. Lee and others, containing 100 acres, more or less.

(b) One tract of land lying in said county, bounded by the land of John R. Carstarphen, by the Squire land and others, it being the tract lately owned and occupied as residence of the late Dr. William Carstarphen, containing 500 acres, more or less.

The deeds are in regular and proper form, executed pursuant to sale under execution, properly and regularly made and conducted, and duly recorded.

Two deeds from P. H. Booth and wife to W. (Willie) E. Carstarphen, dated 31 March, 1893, and 6 October, 1893, duly recorded. The identical lands which were conveyed by the sheriff to Booth.

Plaintiff also introduced complaint, answer, case agreed, and judgment in case of P. H. Booth v. John R. Carstarphen and others, instituted 15 August, 1887. Plaintiff showed that W. (Willie) E. Carstarphen was dead and that he was the only heir at law.

Defendants denied all the allegations of plaintiff's complaint, and contended the purchase money was furnished by John R. Carstarphen,

under an agreement that W. (Willie) E. Carstarphen should hold the land in trust for him. At the close of the evidence, the court below held that defendants had not introduced sufficient evidence to establish a parol trust, and withdrew the issue from the jury.

As to the Dr. William Carstarphen "home tract," which was conveyed by the sheriff to Booth and from Booth and wife to W. (Willie) E. Carstarphen, mother of plaintiff, containing about 570 acres, Dr. W. T. Carstarphen, the plaintiff, came to an agreement with his father, J. R. Carstarphen, 3 July, 1917 (the land surveyed out 570 acres), he to have 380 acres and his father 190 acres in fee (less two acres sold Pres. Garner), deeds made accordingly. The 570-acre tract is out of the controversy, except so far as it may be evidence on the contentions.

As to the "Sykes Old Store Place" tract, the court below charged the jury as follows: "The plaintiff having introduced a clear record title to the land known as 'Sykes Old Store Place,' and the defendants having offered no evidence in rebuttal thereof, and there being no such evidence, the court charges you that in view of the evidence and upon the whole thereof it would be your duty to answer the first issue 'Yes.' "

The real battle was waged around the second and third issues, concerning the "Bass Tract" and the John R. Carstarphen "home place." The plaintiff prayed for special instructions: "(1) In any view of the evidence, and upon the whole thereof, the court charges you that it is your duty to answer the second issue 'Yes.' " (2) Defendants are estopped—Booth v. Carstarphen and others record shows an estoppel. (3) "If you believe the evidence and find the facts to be as testified to by all the witnesses, then the court charges you to answer the third issue 'Yes.' " These instructions were refused, to which exceptions were taken by plaintiff.

The gist of the controversy on these two issues is one of fact. Plaintiff contends, (1) That he is entitled to all the land in the John R. Carstarphen "home place," that is, the excess over the land allotted as a homestead. (2) The "Bass Tract" of about 100 acres. Defendants contend that John R. Carstarphen's "home place" was about 275 acres, and included the "Bass Tract," and all the land was laid off as the homestead, and there was no excess. That originally these two tracts were separate. When John R. Carstarphen acquired the "Bass Tract" from his father it was adjoining his home place, and the two tracts were treated as one—thrown together and worked together. As evidence of the fact, defendants introduced execution dated 5 May, 1887, in favor of Booth v. John R. Carstarphen and others. M. J. Squire, J. A. Squire, and D. B. Zollicoffer were the appraisers, who were regularly summoned and qualified, and laid off John R. Carstarphen's "homestead," and the levy of the sheriff was on the excess. The homestead appraisers' return

recites and describes the land as follows: "We have viewed and appraised the homestead of the said John R. Carstarphen, and the dwellings and buildings thereon, owned and occupied by said John R. Carstarphen as a homestead, to be $800, and that the entire tract, bounded by the lands of Mrs. Susan T. Ellis and Mrs. Jim Brewer on the north, and J. W. Morgan on south, Julia A. Hodges and the land of Dr. William Carstarphen estate on the east, and the old Petersburg County road on the west, said to contain 200 acres, is therefore exempted from sale under execution according to law." This description included all the John R. Carstarphen home place and the "Bass Tract"—an entirety.

That plaintiff and his father, John R. Carstarphen, recital in deed, "have come upon an agreement" in regard to the Dr. William Carstarphen home place, 570 acres, and exchange deeds were made 3 July, 1917. No contention was made by plaintiff that he has any interest in the other lands. Plaintiff knew that although the land was taken in his mother's name, his father paid for it. That after he and his father came to an agreement, his father made a will, on 20 September, 1919, and willed the land now claimed by plaintiff, dealing with it as his own, to defendants, his widow and son.

That the entire tract included the John R. Carstarphen "home tract" and the "Bass Tract," were one and laid off by the appraisers as the homestead, and there was no excess to be sold. That plaintiff claims the "Bass Tract" under sheriff's deed to Booth and from Booth and wife to his mother, W. (Willie) E. Carstarphen, under description as follows: "One tract of land lying in said county, bounded by the lands of Martha Moody, by the public road, and by the lands of Mrs. Lee and others, containing 100 acres, more or less."

On the other hand, defendants contend that the levy under which sale of sheriff to Booth and from Booth and wife to plaintiff's mother, the land was described: "One other tract adjoining Mrs. Martha Moody, Mrs. Lee and others, containing 100 acres," and nothing said about "Bass Tract." This levy does not fit description or cover the "Bass Tract"; therefore, plaintiff has shown no title.

Defendants further contend that the sheriff's deed to Booth and plaintiff's own complaint described the home tract as containing 275 acres, and contend that by actual survey the home tract, including the Bass tract, contained only 246 acres. Without the Bass tract, it would contain only 146 acres. That the Bass tract and what plaintiff called the home tract were all in one body, the cultivated land all forming one field and opening, all cultivated together, without any separation or dividing line. Defendants also contended that the boundaries of the homestead, as set out in the original return of the appraisers, embraced the Bass tract. This return states that the homestead is bounded on the north by

35—193

the lands of Mrs. Susan Ellis and Mrs. Jim Brewer. Defendant's witnesses testified that these lands bounded the Bass tract on the north, and that without the Bass tract they would not touch the Carstarphen land at all. The return also calls for the lands of Julia A. Hodges as one of the boundaries of the homestead. It was shown that her land bounds the Bass tract on one side for its entire length.

The plaintiff introduced evidence in contradiction of this, so that the controversy as to the Bass tract resolved itself into a question of fact as to whether the description relied on by plaintiff did or did not cover the Bass tract. The jury found that it did not. The question as to the John R. Carstarphen home tract the jury found against plaintiff. The second and third issues, found in favor of defendants, determined the fact that plaintiff failed to make out title to the John R. Carstarphen home place, or any part of same, and the homestead, as allotted by the appraisers, was the entire John R. Carstarphen home place—no excess, and the Bass tract included.

There were numerous facts and circumstances to support the contentions of the respective parties. Should the verdict be disturbed? We think not.

The *first legal* position taken by plaintiff: "Was the paper-writing purporting to be a 'homestead appraisers' return' properly admitted in evidence, and the question of its validity properly submitted to the jury?"

Plaintiff contends: (1) That it had not been registered; (2) that it was not found in the judgment roll; (3) that it was not in fact the return of the appraisers.·

Dr. D. B. Zollicoffer, the only one of the appraisers now living, testified that it was the return of the appraisers, and it contained the return of the sheriff showing that he summoned and qualified the three appraisers, who signed it on 11 May, 1887, and that on the same day he levied on the excess. It was found in the file of "Executions" in the office of the clerk of the Superior Court, filed with the executions under which it was allotted. These execution also contained the sheriff's return to the effect that he had summoned these men to lay off the homestead, and that they had allotted it on 11 May, 1887, and that on said day he had levied on all lands in excess. Also contained his return of the sales.

R. M. Beale, deputy clerk, testified: "These original papers, executions and return were found in the *proper files.* I marked the homestead return with my initials, so that I could identify it; this is the return."

C. S., 731, in reference to *duty of appraisers; proceeding on return,* latter part of said section, is as follows: "In all judicial proceedings the original return, or a certified copy, may be read in evidence."

Return need not be registered in county where homestead situated if it is filed in the judgment roll of the action. The filing of the return in the judgment roll is constructive notice. *Bevan v. Ellis,* 121 N. C., p. 224. Registration of allotment is not necessary, except when made on petition of homesteader. *Crouch v. Crouch,* 160 N. C., p. 447.

We think the evidence was competent—its probative force was for the jury.

Plaintiff contends the homestead allotment was invalid, being for $800, instead of $1,000. The irregularity, we do not think, makes the allotment void; if there was any question, the judgment in the action of Booth v. Carstarphen and others, record introduced by plaintiff, cured any irregularity. C. S., 740—procedure as to exception to valuation and allotment.

As to the *second* contention of plaintiff: "Was the court below correct in those certain portions of its charge, duly excepted to, relating to said return, to the burden of proof, and the general effect of the testimony, particularly the record in Booth v. Carstarphen?" And the *third* contention: "Was the plaintiff entitled to a directed verdict upon the second and third issues?"

From a careful review of the charge of the court below, we think these contentions cannot be sustained, and that plaintiff on the second and third issues was not entitled to a directed verdict. *See defendants' appeal.* The burden was on the plaintiff. It was an issue of fact for the jury to determine, not the court.

The entire controversy, as to the second and third issue, is practically one of fact, and the probative force for the jury. The court below charged the jury: "The burden of proof is upon the plaintiff to satisfy the jury by the greater weight of the evidence that he is the owner and entitled to the possession of the John R. Carstarphen home place, excepting therefrom the homestead allotment, and upon the plaintiff to satisfy the jury by the greater weight of the evidence that he is the owner and entitled to the possession of the Bass tract." The allegation of plaintiff was that he was the owner, "excepting therefrom the homestead of John R. Carstarphen, deceased, consisting of the dwelling-house and ......... acres." This was denied by defendants.

It is well settled that in an action of ejectment a party must recover upon the strength of his own title and not the weakness of his adversary. *Brock v. Wells,* 165 N. C., 170.

In *Moore v. Miller,* 179 N. C., 396, the various methods of showing title by which the requirements can be met are specifically set forth.

The presumption on appeal to this Court is that there is no error committed in the trial in the court below. The appellant must show error, and then a new trial is granted only where the error is material and

prejudicial, amounting to a denial of substantial justice. Appellant must show prejudicial and reversible error. A sound public policy looks to the speedy ending of litigation. Courts never encourage litigation, but look with favor on adjustment of differences, and this is especially true in family disputes. In the present case, it is an elder brother against a minor brother, who is defended by guardian *ad litem.* The jury has settled the disputed facts in law we can find in plaintiff's appeal

No error.

## DEFENDANTS' APPEAL.

APPEAL by defendants from *Calvert, J.,* and a jury, at November Term, 1926, of NORTHAMPTON. No error.

We have considered plaintiff's appeal in this action, and now come to defendants'.

The question presented by defendants: "This was an action in ejectment, and involves the question whether, under the evidence, his Honor could properly direct a verdict for the plaintiff, on whom the burden of proof rested."

The first issue, material only to be considered, and the answer thereto is as follows: "Is the plaintiff the owner and entitled to the possession of the tract of land known as the 'Sykes Old Store Place,' described in subsection 3 of section 1 of the complaint? Answer: 'Yes.'"

On this issue the court charged: "The court charges you that in view of the evidence, and upon the whole thereof, it would be your duty to answer the first issue 'Yes'; that is, that the plaintiff is the owner and entitled to the possession of the tract of land known as 'Sykes Old Store Place,' described in subsection 3 of section 1 of the complaint."

Defendants contend that plaintiff introduced, over the objection of defendants, the record in the case of P. H. Booth v. John R. Carstarphen and others, in order to show an estoppel against defendants. That this was incompetent, as no estoppel was pleaded. In *Upton v. Ferebee,* 178 N. C., p. 196, *Allen, J.,* says: "'An estoppel which "shutteth a man's mouth to speak the truth" should be pleaded with certainty and particularity. 8 Enc. Pl. and Pr., 11. The court should be able to see from the pleadings what facts are relied upon to work the estoppel.' (*Porter v. Armstrong,* 134 N. C., 455.) And this case does not come within the exception to the rule, holding that it is not necessary to plead an estoppel when it is apparent on the face of the record, or when the pleadings are general, as in ejectment or trespass, and the party has had no opportunity to enter the plea (*Wilkins v. Suttle,* 114 N. C., 556); *Weeks v. McPhail,* 129 N. C., 73, because in his answer the defendant alleges the tenancy and his claim as landlord, thus affording the opportunity to meet these allegations by pleading the facts relied on to create the estoppel."

CARSTARPHEN v. CARSTARPHEN.

In *Fleming v. Sexton,* 172 N. C., at p. 253, the same judge says: "It has been held, under certain conditions, that evidence of an estoppel may be offered by the defendant without pleading it (*Weeks v. McPhail,* 129 N. C., 73), and that it is competent, under a general denial, to show that any deed in the chain of title of the plaintiff is void because made contrary to statute, or by a grantor mentally incapable, or for fraud in the factum. *Mobley v. Griffin,* 104 N. C., 116; *Averitt v. Elliott,* 109 N. C., 564."

Conceding, but not deciding, that the estoppel, the action being for ejectment, should have been pleaded, the burden being on plaintiff, was error, yet we cannot on the entire record hold it as reversible error. All the evidence on the entire record was one way in regard to the "Sykes Old Store Place." Defendants introduced in evidence a description of the lands of J. R. Carstarphen levied upon by the sheriff, and which were sold in excess of the homestead. Among the tracts is the *"Sykes Old Store Place," 250 acres.* This tract was bought at the sheriff's sale by Booth and deeded by Booth and wife to W. (Willie) E. Carstarphen, mother of plaintiff.

In *Booth v. Hairston, ante,* 281, it was held: "Our system of appeals is founded on public policy and appellate courts will not encourage litigation by granting a new trial, which could not benefit the litigant and the result changed upon a new trial, and the nongranting was not prejudicial to his rights. *Bateman v. Lumber Co.,* 154 N. C., 253; *Rierson v. Iron Co.,* 184 N. C., 363; *Davis v. Storage Co.,* 186 N. C., 676. 'They will only interfere, therefore, where there is a prospect of ultimate benefit.' *Cauble v. Express Co.,* 182 N. C., p. 451."

The next vice in the charge complained of by the defendants is that the verdict is a directed one, and this cannot be done when the burden of proof was on plaintiff; it was an issue of fact for the jury, and not for the court to determine, citing *Cox v. R. R.,* 123 N. C., 611; *Bank v. School Committee,* 121 N. C., 109. Conceding this contention is correct, *yet the defendants' evidence,* by every reasonable interpretation, and that unobjected to introduced on the part of plaintiff, all show that the title to the "Sykes Old Store Place" was in plaintiff. See *Trust Co. v. Trust Co.,* 190 N. C., p. 468.

We find in defendants' appeal

No error.