T. LACY WILLIAMS, ADMINISTRATOR C. T. A., D. B. N. ON THE ESTATE OF K. B. JOHNSON, DECEASED, v. MRS. M. ALICE JOHNSON, WIDOW OF K. B. JOHNSON, DECEASED, F. T. DUPREE, JR., TRUSTEE, MRS. ETHEL G. BONNER, EXECUTRIX OF A. M. BONNER, C. P. DICKSON, L. C. YEARGAN, W. L. TOTTEN, INDIVIDUALLY AND AS TRUSTEE, W. P. CAMPBELL, FRED HUNTER, J. L. GARWOOD, S. P. VENTERS, J. L. GEORGE, A. A. CORBETT AND GEORGE W. BREWER.

(Filed 4 May, 1949.)

**1. Homestead § 4—**

Right and title to homestead is created by the Constitution, Art. X, sec. 2, and a resident may have his homestead allotted even though he is solvent, G.S. 1-386, and while the sheriff must lay off homestead before levy and sale under execution upon real property against a resident debtor, G.S. 1-371, the allotment of the sheriff is only for the purpose of ascertaining whether there be any excess of property over the homestead and does not create the right or vest title in the debtor.

**2. Homestead § 8—**

When the homestead is once allotted, the only way the property embraced therein may lose its homestead character is by death, abandonment, or alienation.

**3. Same: Judgments § 23—**

Payment of the judgment under which homestead has been allotted does not extinguish the homestead, and does not renew the running of the statute against judgments then of record or thereafter docketed.

**4. Homestead § 9—**

The registration of a certified copy of the report of the appraisers is indispensable only when the allotment is made on petition of the homesteader and when the homestead is laid off by the sheriff, failure to register report of the appraisers is an irregularity insufficient to invalidate the allotment.   For statutory change on this aspect see Chap. 912, Session Laws of 1945.

**5. Homestead § 4: Appeal and Error § 51b—**

Decisions of long standing adjudicating homestead rights, which have not been overruled, create rules of property governing such rights so long as they are not superseded by act of the Legislature.

**6. Judgments § 22a—**

A docketed judgment is a lien upon the realty of the judgment debtor and is also evidence of a personal debt of the judgment debtor, but creates no lien against the personalty.

**7. Judgments § 23: Homestead § 4—**

The allotment of homestead suspends the running of the statute of limitations against the judgment as a lien upon the property embraced in the homestead, but does not toll the statute in respect to the debt as such or the personal liability of the debtor for the payment thereof.   G.S. 1-369.

**8. Executors and Administrators § 17: Limitation of Actions § 10—**

If the judgment creditor wishes to share in the distribution of the personal estate of his deceased judgment debtor, G.S. 28-105, et seq., and to protect himself against the running of the statute of limitations as against the debt, G.S. 1-22, he must file his claim with the personal representative of the deceased.

**9. Executors and Administrators § 13f—**

Where land is sold to make assets to pay the debts of the deceased, the proceeds of sale retain the quality of real property to the extent necessary to discharge all liens thereon, and only the surplus, if any, becomes personal property and is payable to the personal representative as personal assets of the estate.

**10. Same: Executors and Administrators § 29—**

Where the proceeds of sale of land to make assets to pay debts of the decedent are insufficient to pay all liens in full, the proceeds must be used exclusively for the payment of the liens, G.S. 28-105 (5), and no part of the proceeds may be taxed with costs of administration.

**11. Same: Reference § 17—**

Where, in a suit to obtain advice and instruction of the court for the proper distribution of the assets of the estate, the cause is referred to a referee, the taxing of the referee's fee is within the discretion of the court, G.S. 6-21 (6), and order of the court pro rating the referee's fee between the funds derived from sale of realty to make assets and the personal property of the estate will not be disturbed.

APPEALS by W. L. Totten, individually and as trustee, Ethel C. Bonner, executrix, and C. P. Dickson, respondents, from *Stevens, J.,* March Term, 1949, WAKE.

Petition for advice and instruction respecting the proper distribution of estate funds in the hands of petitioner.

K. B. Johnson, a resident of Wake County, died testate, possessed of certain personal property, and also certain real estate which had theretofore been allotted to him as a homestead. Numerous judgments against him appear of record at the time of his death and for years prior thereto. His widow, the executrix, filed a final account and paid into the clerk's office $368.44, without undertaking to resort to the land to make assets to pay the judgment creditors.

Thereafter, plaintiff was appointed administrator *c. t. a., d. b. n.* He collected from personal assets the additional sum of $318.14, making total personal assets in the sum of $686.58. He also instituted a proceeding

to sell the homestead land to make assets. The land was sold and he received and now has in hand $6,500, subject to certain claimed administrative expenses.

C. P. Dickson, A. M. Bonner, testator of Ethel C. Bonner, and W. L. Totten, judgment creditors and respondents herein, filed notice of their respective judgments with the executrix. The claims of Totten and Dickson were rejected. The claim of Mrs. Bonner was first disapproved and then accepted and approved. Dickson instituted suit and recovered judgment, but Totten elected not to sue, so that now the claims of Dickson and Bonner have been filed with the executrix within the law and they claim the prior right to participate in the distribution of the personal assets.

In 1935 there were a number of judgments against K. B. Johnson of record, including judgment in favor of P. D. Snipes against K. B. Johnson *et al.,* docketed in Judgment Docket 35 at p. 170. Execution was issued on the Snipes judgment. The sheriff, acting thereunder, had Johnson's homestead allotted in one town lot and a thirty-five acre tract of land. Notations of the allotment dated 11 June 1935 and the report of the sheriff appear on the face of the judgment. The return of the appraisers appears in the judgment roll. It is contended that a certified copy of the homestead allotment was not certified to and registered in the office of the register of deeds of Wake County, but the referee did not so find and there is no exception to his failure to so find.

The Snipes judgment under which the homestead was allotted bears this entry: "Received of Harold W. Johnson $8,717.70 in full of judgment, interest and costs. This December 3, 1935." signed by the assistant clerk.

It is conceded that if the payment of the judgment under which the homestead was allotted or the irregularity in the returns thereof does not revive the running of the statute of limitations, then the first three judgments docketed and now owned by respondent Dupree, Jr., trustee, and the Ogburn judgment now owned by respondent Totten, trustee, will consume all the funds derived from the sale of the homestead property, and the appellants, other than Totten, will be relegated to such rights as they may have to participate in the distribution of the personal estate.

The referee filed his report in which he found facts in detail. Upon the facts found he concluded that: (1) there was a valid allotment of homestead which operated to suspend the running of the statute of limitations upon all docketed judgments against K. B. Johnson during the continuance of the homestead; (2) the cancellation of the judgment under which the homestead was allotted did not operate to cancel the homestead allotment or revive the running of the statute of limitations against docketed judgments; (3) upon the death of the judgment debtor, the

statute of limitations began to run anew but was again suspended by the institution of the proceeding to sell the land to make assets; (4) a judgment creditor who has an existing lien upon land embraced within a homestead allotment is not required to file or prove the claim with the personal representative of the judgment debtor; (5) the proceeds from the sale of the homestead land retain their character as realty for the purpose of discharging all liens against the same in the order of their priority at the time of the death of the judgment debtor; (6) the homestead allotment tolled the statute of limitations as to docketed judgments solely for the protection of their lien and that therefore the personal debts evidenced by the judgments numbered one to six inclusive are now barred by the ten-year statute and judgments numbered seven to fourteen inclusive are also barred in so far as they vest in the judgment creditors any right to share in the distribution of the personal estate; (7) a judgment creates no lien or personal property and the statute, after the death of the judgment debtor, continues to run against it unless the claim is filed with the personal representative; (8) the amounts due on the Bonner and the Dickson judgments constitute valid claims against the estate and must share in the distribution of the personal assets; (9) the fund derived from the real property, less the costs of sale, should be applied to the payment of the first three judgments owned by Dupree, Jr., trustee and the Ogburn judgment owned by Totten, trustee, in the order of their record priority; and (10) the fund derived from personal assets should be applied first toward the payment of the costs of administration, attorneys' fees, and referee's fees, and the balance thereof should be paid on the Bonner and Dickson judgments, notices of which were filed with the testatrix.

Respondents Dickson and Bonner filed exceptions to the report as appears of record.

The cause came on to be heard on the referee's report at the January Term, 1949, Wake Superior Court. It was then agreed that the court should take the cause under advisement and render judgment in or out of court at his convenience.

At the March Term, on 16 March, the judge rendered judgment overruling all exceptions and affirming the report of the referee. At the same term, on 24 March, the court signed an amendatory judgment in which it is directed that the costs of court, the costs of administration, attorneys' fees and referee's fees be prorated between the fund derived from the sale of real estate and the fund derived from the sale of personal property "in proportion to the total amount of money derived from each source." Respondent Totten, trustee, excepted to the amendatory judgment and appealed. Respondents Bonner and Dickson also appealed.

*Briggs & West for Mrs. Ethel C. Bonner, Exr.*
*A. J. Fletcher and F. T. Dupree, Jr., for F. T. Dupree, Jr., trustee.*
*W. L. Totten, individually and as trustee, in propria persona.*
*Harris & Poe and Logan D. Howell for C. P. Dickson.*

BARNHILL, J. The appeals here present two questions for decision: (1) Does the payment of the judgment under which a debtor's homestead is allotted extinguish the homestead and revive the running of the statute of limitations against judgments then of record or thereafter docketed, and (2) did the court err in taxing a ratable portion of the costs incurred in this proceeding against the fund derived from the sale of the homestead real estate?

The right to a homestead is guaranteed by the Constitution. N. C. Const., Art. X, sec. 2. Insolvency or the need for protection against sale is not a prerequisite to its allotment. While the homestead may have real beneficial value only when the owner is in debt and pressed by final process of the court, it is ever operative. A resident occupant of real property, though free from debt and possessed of great wealth, may, if he so elects, have it set apart to him on his own voluntary petition. G.S. 1-386.

When a sheriff is seeking to collect a judgment under execution issued to him, he must, before levying upon the real property of the debtor, proceed to have the debtor's homestead allotted. G.S. 1-371. But this does not create the homestead right. Title thereto is vested in the owner by the Constitution and no allotment by the sheriff is necessary to create the right or vest the title.

No sale can be had until the homestead is first ascertained and set apart to the judgment debtor. The allotment by the sheriff is only for the purpose of ascertaining whether there be any excess of property over the homestead which is subject to sale under execution. *Lambert v. Kinnery,* 74 N.C. 348; *Gheen v. Summey,* 80 N.C. 188; *Littlejohn v. Egerton,* 77 N.C. 379. The issuance of the execution and the levy thereunder merely set in motion the machinery through which the homestead is valued and set apart to the owner.

Thus it appears that the homestead, whether allotted on the voluntary petition of the owner or by the sheriff under execution, is not the offspring of and does not draw its life blood from a judgment debt. It stems from the Constitution and "it is not the condition of the homesteader that creates the homestead condition, but the force of the Constitution, attaching to and acting upon the land." *Thomas v. Fulford,* 117 N.C. 667.

When the homestead is once allotted, the only way the property embraced therein may lose its homestead character is by death, abandon-

ment, or alienation.   40 C.J.S. 442; *Posey v. Commercial Nat. Bank,* 55 S.W. 2d 515; *Hillsborough Inv. Co. v. Wilcox,* 13 So. 2d 448; *Nelson v. Hainlin,* 104 So. 589; *Fidelity & Casualty Co. of N. Y. v. Magwood,* 145 So. 67.

Once acquired it is presumed to continue.   So strong is this presumption that the majority of courts hold that where the homestead character has attached to property, it can be lost only by waiver or abandonment by the owner.   *In re McClain's Estate,* 262 N.W. 666; *City Nat. Bank v. Johnson,* 96 S.W. 2d 482; *De Haven & Son Hardware Co. v. Schultz,* 269 P. 778.

"If . . . the homestead has once been laid off at the instance of creditors, though the debts may be discharged, the restriction remains . . ." *Hughes v. Hodges,* 102 N.C. 236; *Tucker v. Tucker,* 103 N.C. 170.

"While the homestead as allowed lasts, it remains 'exempt from sale under execution or other final process obtained on any debt;' and it lasts during the life of the owner thereof; and, after his death, during the minority of his children, or any one of them, and the widowhood of his widow, unless she be the owner of a homestead in her own right." *Jones v. Britton,* 102 N.C. 166.

The purpose of the homestead provision of the Constitution is to surround the family home with certain protection against the demands of urgent creditors.   *De Haven & Son Hardware Co. v. Schultz, supra; Gee v. Moore,* 14 Cal. 472; 2 Tiffany, Real Property, sec. 577.   It carries the right of occupancy free from levy or sale under execution so long as the claimant may live unless alienated or abandoned.   It is the place of residence which the homesteader may improve and make comfortable and where his family may be sheltered and live, beyond the reach of those financial misfortunes which even the most prudent and sagacious cannot always avoid.

To say that it is defeated and its protection destroyed merely by the payment of the judgment under which it was allotted is to overlook the very nature and purpose of the right.   *Gardner v. McConnaughey,* 157 N.C. 481, 73 S.E. 125.

It is suggested that if the payment of the judgment did not vacate the homestead allotted then the homesteader loses the protection it is intended to afford; that if vacated, the running of the statute of limitations would no longer be tolled, but if continued in force the judgments are kept alive to the detriment of the homesteader.   The answer here is the homestead allotment protected the debtor's home against execution sale under any one of the numerous judgments then of record—the end it was designed to accomplish.

If a certified copy of the report of the appraisers was not registered in the office of the register of deeds of the county, as now contended, this was

an irregularity insufficient in force and effect to invalidate the allotment. *Bevan v. Ellis,* 121 N.C. 224; *Crouch v. Crouch,* 160 N.C. 447, 76 S.E. 482; *Carstarphen v. Carstarphen,* 193 N.C. 541, 137 S.E. 658.

The object of the notice by registration in the office of the register of deeds "is not to inform the creditors of the homesteader that the homestead, after it is allotted, cannot be sold under execution for his debts, because the creditors are presumed to know that that was so even before the homestead is allotted." It is to give notice to third parties having transactions with the debtor respecting the homestead property and is indispensable only when the allotment is made on the petition of the homesteader. *Bevan v. Ellis, supra; Crouch v. Crouch, supra.*

The soundness of these decisions may not be attacked at this late date. They created a rule of property which governed the application of the homestead statute as to all transactions affecting the homestead so long as they were not overruled or superseded by Act of the Legislature. (In this connection note Chap. 912, Session Laws, 1945, which now makes the registration of the return of the appraisers a prerequisite to its validity, at least against all third parties.)

A money judgment is a bipronged, dual-natured instrument: (1) It is the evidence of a personal debt of the judgment debtor payable out of any assets he may possess, and (2) it is a lien against the real estate of the debtor as security for the payment of the debt.

When a homestead is allotted it serves to suspend the running of the statute of limitations against the judgment as a lien upon the property embraced in the homestead. *Cleve v. Adams,* 222 N.C. 211, 22 S.E. 2d 567. It does not toll the statute in respect to the debt as such or the personal liability of the debtor for the payment thereof. G.S. 1-369, 370. *McDonald v. Dickson,* 85 N.C. 248; *Kirkwood v. Peden,* 173 N.C. 460, 92 S.E. 264; *Hicks v. Wooten,* 175 N.C. 597, 96 S.E. 107.

If the judgment creditor wishes to share in the distribution of the personal estate of his deceased judgment debtor, G.S. 28-105, *et seq.,* and to protect himself against the running of the statute of limitations as against the debt, G.S. 1-22, he must file his claim with the personal representative of the deceased. *Daniel v. Laughlin,* 87 N.C. 433; *Barnes v. Fort,* 169 N.C. 431, 86 S.E. 340; *Rodman v. Stillman,* 220 N.C. 361, 17 S.E. 2d 336. While the amount due is adjudicated, it is nonetheless a provable debt. *Moore v. Jones,* 226 N.C. 149, 36 S.E. 2d 920.

Ordinarily the judgment creditor must enforce his rights against the estate of his deceased debtor through the personal representative. *Moore v. Jones, supra.* Hence it is proper, if not mandatory, to give notice in all instances. However, as the estate here is insolvent and those judgment creditors who have not filed notice with the plaintiff or his predecessor can only assert their claims against the homestead property, that question

is not presented for decision.  See, however, *Stonestreet v. Frost,* 123 N.C. 640, and *Rodman v. Stillman, supra.*

The referee correctly concluded that the fund in the hands of the plaintiff derived from personal assets of deceased should first be applied toward the payment of the costs of administration, including attorneys' fees.  The court below erred in sustaining the exception thereto and directing that such costs should be paid in part out of the fund derived from the sale of real property.

This proceeding is a necessary incident to the proper administration of the estate of the deceased and the costs of administration are payable out of the personal assets.  When resort is had to land to make assets, the proceeds of the sale retain the quality of real property to the extent necessary to discharge all liens thereon.  Only the surplus, if any, becomes personal property and is payable to the personal representative as personal assets of the estate.  *Moore v. Jones, supra.*  To say that this fund must pay a part of the costs of administration is but to hold that it is, *pro tanto,* personal property.  This is *contra* the controlling rule and would necessarily deprive the judgment creditors of a part of their security which must, under the law, be applied exclusively to the payment of their liens to the extent of the value of the security.  G.S. 28-105 (5).  *Matthews v. Peterson,* 150 N.C. 134, 63 S.E. 721.  The fund is set apart to their use.  It may not be consumed, in whole or in part, in the payment of the costs of administration.

*Lightner v. Boone,* 222 N.C. 421, 23 S.E. 2d 313, is factually distinguishable.  There a trust fund—a personal asset—was the subject of controversy.

What is here said does not apply to the referee's fee which is taxable in the discretion of the court.  It is so expressly provided by statute.  G.S. 6-21 (6).

The amendatory judgment entered 24 March 1948, in so far as it relates to the taxation of costs other than the referee's fee must be vacated. Both judgments as here modified are affirmed.

Modified and affirmed.