THE SEEMAN PRINTERY, INC. v. PHILIP C. SCHINHAN, INDIVIDUALLY AND D/B/A VON PRESS

No. 7615SC1011

(Filed 21 December 1977)

1. **Homestead and Personal Property Exemptions § 2— value of homestead exemption**

    The value of the homestead exemption (i.e., land not subject to be sold under execution) remains at $1,000 as fixed in G.S. 1-372 and G.S. 1-386. Art. X, § 2(1) of the N. C. Constitution.

2. **Homestead and Personal Property Exemptions § 2— homestead exemption— allotment in hallway of home**

    Constitutional and statutory enactments relating to the homestead exemption do not permit exemption of an entire usable dwelling house, regardless of its value. Therefore, defendant's $1,000 homestead was properly allotted, at defendant's direction, in an area in the hallway adjacent to the front door of defendant's house.

3. **Homestead and Personal Property Exemptions § 2— appeal from allotment— question of law—no jury trial**

   Defendant was not entitled to a jury trial in the superior court upon his appeal of an allotment of his homestead by appraisers where no issue of fact was raised and the only issue raised was the legal one of whether statutory and constitutional provisions allowed defendant to claim his entire dwelling as his homestead exemption.

APPEAL by defendant from Lee, Judge. Judgment entered 12 November 1976 in Superior Court, ORANGE County. Heard in the Court of Appeals 1 September 1977.

On 27 May 1975 plaintiff obtained judgment against defendant for $5,900.00. No appeal was taken. After execution issued, defendant asked that his homestead be set aside, and appraisers were summoned and qualified as required by statute. Defendant owned his residence, a two-story dwelling located on a two acre lot in Chapel Hill, N.C. The appraisers valued this property at approximately $72,000.00, of which $19,000.00 represented the value of the land and $53,000.00 the value of the house. This property was subject to a deed of trust and to a prior judgment. Defendant, together with his wife, also owned other unimproved lots located in Orange and Franklin Counties, N.C. One of these was subject to a mortgage, and all were subject to the prior judgment.

When the sheriff and appraisers arrived at defendant's dwelling, the sheriff inquired of defendant what area he wished to select as his homestead. Defendant replied that he claimed his entire dwelling house with property sufficient to maintain the same and to provide ingress and egress, to which the sheriff responded that he could be allotted only an area equivalent to $1000.00 in value. Defendant objected, but when the sheriff again asked him to make a selection based on being allowed only an area equivalent to $1000.00 in value, defendant requested that the allotment of his homestead begin at a point at the front door of his dwelling. The appraisers thereupon allotted defendant's homestead in an area approximately 5 feet wide by 15.4 feet deep beginning at the front door of petitioner's dwelling and extending toward the rear of the house, the entire area so allotted being located in the hallway adjacent to the front door of defendant's house. This hallway area does not contain any plumbing, electrical, bedroom, bathroom, kitchen, or dining room facilities, nor does it afford access to the heating equipment located in the base-

ment of the house. The allotment made no provision for ingress or egress from the public road adjoining defendant's lot to the front door of his dwelling. The area allotted was subsequently described by exact metes and bounds as result of a survey commissioned by the sheriff. The appraisers made due return of their proceedings as required by G.S. 1-372.

In apt time defendant filed objections, and the matter was placed on the civil issue docket of the superior court for trial as provided in G.S. 1-381. At the hearing, defendant offered the testimony of an expert witness in the field of economic history who testified that in 1868, when the $1,000 homestead exemption was established, 250 acres of typical farm land in Orange County containing structures such as a house and barn could be purchased for $1,000. He further testified that $1,000 in 1868 would be worth $170,000 in 1976.

The court, sitting without a jury, concluded that defendant was not entitled to have the entire dwelling and surrounding real property included in his homestead exemption, and entered judgment affirming the appraisers' return. Defendant appealed.

*Mount, White, King, Hutson, Walker & Carden by R. Hayes Hofler, III, for plaintiff appellee.*

*Weinstein, Sturges, Odom, Bigger & Jones, P.A., by T. LaFontine Odom for defendant appellant.*

PARKER, Judge.

The first homestead exemption law in this State was enacted by our General Assembly by Ch. 61 of the Laws of 1866-67. By that statute a citizen of the State owning a freehold was permitted to petition for allotment of a homstead (i.e., land not subject to be sold under execution) "not exceeding one hundred acres if in the county, or one acre if in the city or town, which allotment may include a single dwelling and the necessary out-houses." This statute was short-lived, being quickly superseded by the provisions of the 1868 Constitution. Aycock, *Homestead Exemption in North Carolina*, 29 N.C.L. Rev. 143 (1950).

Article X, Sec. 2, of the 1868 Constitution provided as follows:

Every homestead, and the dwellings and buildings used therewith, not exceeding in value one thousand dollars, to be selected by the owner thereof, or in lieu thereof, at the option of the owner, any lot in a city, town or village with the dwelling and buildings used thereon, owned and occupied by any resident of this State, and not exceeding the value of one thousand dollars, shall be exempt from sale under execution or other final process obtained on any debt. But no property shall be exempt from sale for taxes, or for payment of obligations contracted for the purchase of said premises.

Supplementary legislation implementing this constitutional provision was promptly enacted by Ch. 137 of the Public Laws of 1868-69. The major provisions of this statute have remained in effect throughout all of the years since its enactment and now appear in Article 32 of G.S. Ch. 1. This Article provides, in G.S. 1-371, for appointment of appraisers before levy is made upon the real estate of any resident who is entitled to a homestead. These appraisers are directed, in G.S. 1-372, to "value the homestead with its dwelling and buildings thereon, and lay off ·to the owner . . . such portion as he selects not exceeding in value one thousand dollars . . . ." If no selection is made by the owner, the appraisers are directed to make selection for him, "including always the dwelling and buildings used therewith." G.S. 1-376. Even when no execution has issued, a resident of the State entitled to the benefit of the homestead may, by petition to the clerk of superior court, have three "assessors" appointed, who "shall meet at the applicant's residence, and, after taking the oath prescribed for appraisers before some officer authorized to administer an oath, lay off and allot to the applicant a homestead with metes and bounds, according to the applicant's direction, not to exceed one thousand dollars ($1,000.00) in value . . . ." G.S. 1-386.

Article X, Section 2, of our State Constitution remained unchanged until 1 July 1971. On that date our revised Constitution, which was adopted by vote of the people at the general election held on 3 November 1970, became effective. Article X, Sec. 2(1), of our present Constitution provides:

(1) *Exemption from sale; exceptions.* Every homestead and the dwellings and buildings used therewith, to a value fixed by the General Assembly but not less than $1,000, to be

selected by the owner thereof, or in lieu thereof, at the option of the owner, any lot in a city or town with the dwellings and buildings used thereon, and to the same value, owned and occupied by a resident of the State, shall be exempt from sale under execution or other final process obtained on any debt. But no property shall be exempt from sale for taxes, or for payment of obligations contracted for its purchase.

[1] Comparison of former Article X, Section 2, with the present Article X, Sec. 2(1) reveals that the major difference is that under the former the homestead could not exceed $1000.00 in value, while under the present Constitution the homestead shall be to a value fixed by the General Assembly but not less than $1000.00. To date, our General Assembly has not amended G.S. 1-372 or G.S. 1-386 to increase the value of the homestead, and the value of the homestead remains at $1000.00 as fixed in those statutes.

It may well be, as defendant in the present case contends, that retention of the $1000.00 limitation largely vitiates the original purpose of the homestead exemption. Our Supreme Court once described that purpose as follows:

> The purpose of the homestead provision of the Constitution is to surround the family home with certain protection against the demands of urgent creditors. [Citations omitted.] It carries the right of occupancy free from levy or sale under execution so long as the claimant may live unless alienated or abandoned. It is the place of residence which the homesteader may improve and make comfortable and where his family may be sheltered and live, beyond the reach of those financial misfortunes which even the most prudent and sagacious cannot always avoid.

*Williams v. Johnson*, 230 N.C. 338, 343, 53 S.E. 2d 277, 281 (1949). That purpose certainly cannot be attained so long as the value of the exemption is limited to $1000.00. As the testimony of defendant's expert witness makes clear, while at one time a value of $1000.00 would permit the inclusion in a homestead exemption of a comfortable home, today the effects of inflation have been such that homes currently valued at $1000.00 either cannot be found or are unfit for human habitation. See Comment, *Does North Carolina Really Have a Homestead Exemption?* 2 Wake Forest Intra. L. Rev. 53 (1966). Be that as it may, our Constitution ex-

pressly vests in the General Assembly, not in the courts, the exclusive power to increase the value of the homestead exemption. Perhaps the refusal of our General Assembly to increase the value of the homestead exemption reflects a conscious determination that the exemption is no longer as economically or socially desirable as it was once thought to be. *See* Vukowich, *Debtors' Exemption Rights*, 62 Geo. L.J. 779, 797-807 (1974).

[2] Defendant's contention that our constitutional and statutory enactments relating to the homestead exemption should be so construed as to permit exemption of an entire usable dwelling house, regardless of its value, cannot be sustained. The short answer to this contention is that it requires that we ignore both the clear express language of our statutes and the interpretation which our Supreme Court has given to them. As already noted, G.S. 1-372 still limits the value of the homestead exemption to $1000.00, and G.S. 1-376, which was originally enacted as part of the same statute, must be read *in pari materia* and construed consistently with G.S. 1-372. Long ago our Supreme Court was confronted with a case in which the debtor claimed his homestead exemption in real property which the parties agreed was indivisible, the premises being a lot covered by a four-room house. In the Superior Court it was determined that the property had a value of $1200.00, and the Superior Court adjudged that a one-sixth undivided interest in the property should be sold and the proceeds applied to satisfy the claim of the creditor. On appeal by the debtor, our Supreme Court reversed, holding that this solution to the problem had no warrant in the provisions of the law. *Campbell v. White*, 95 N.C. 491 (1886). The opinion of the Court, written by Smith, C.J., then went on to observe as follows (pp. 494-95):

> This view disposes of the question of the ruling below and the subject matter of the appeal. But it is not improper for us to say that we do not see why a portion of the house, containing rooms of sufficient value, may not be set apart, as in an allotment of dower. There are inconveniences readily anticipated in such a subdivision, but they are unavoidable in giving effect to the law and preserving the rights of both debtor and creditor. It gives the former all the constitution allows — it exposes all beyond to the creditor's demand.

> A case was called to our attention, decided in a sister State, where the Court held that if the land was indivisible,

the exemption should be allowed of the whole lot, though of value in excess of that fixed and limited by law, thus ignoring the creditor's rights altogether. We are not disposed to follow this ruling, for it would be just as reasonable to deny any homestead because none could be assigned of the value specified, and this would be to ignore the provisions made for the debtor. The right to the homestead and the right to subject the excess of the land to the payment of debts, are equally secured, and both must be recognized in making an apportionment.

The course suggested would seem alone to be open, in consistency with the statute, until some legislation shall solve the problem, which the constitution will allow.

Although the above quoted language from the opinion of the Court in *Campbell v. White, supra*, may not have been essential to the actual holding of our Supreme Court in that case, it has never been disapproved. On the contrary, the case has been several times cited with approval by our Supreme Court and by respected authority. For example, 2 McIntosh, N.C. Prac. and Procedure, § 2026, p. 329, contains the following:

The fact that the land is incapable of division, as where there is a dwelling on a small lot, will not justify the appraisers in giving the whole as a homestead, if it is worth more than $1,000, nor can the court order a sale and apportionment of the proceeds; but it is suggested that a part of the land and a part of the house might be set apart.

Carefully chosen language as to the nature of homestead exemption rights contained in an opinion of our Supreme Court, particularly when the decision in which it is contained has been cited with approval over a long span of years, tends to create a rule of property governing such rights so long as it is not superseded by a valid act of the General Assembly. See *Williams v. Johnson, supra*. To change such a rule of property at this late date by increasing the value of the homestead exemption would present a serious Constitutional question concerning the impairment of the obligation of contracts, at least insofar as the rights of present creditors are concerned. Accordingly, we hold that the rights of the parties in the present case are controlled by the language above quoted from the opinion in *Campbell v. White, supra*, and on authority of that opinion we reject defendant's contention

that he is entitled to claim his homestead exemption in his entire dwelling regardless of its value.

It may be conceded that the result reached in the present case is absurd and benefits neither the debtor nor his creditor. The debtor has his homestead in an area which is utterly useless to him, while the value of his remaining property from which his creditor must seek to collect his judgment has been substantially impaired. This unhappy result, however, was of the debtor's own choosing. More sensible alternatives were available to him. He had the right to designate the land from which his homestead should be allotted, and he could have chosen to have it allotted from a portion of his lot adjacent to the street and not covered by the dwelling or from one of the unimproved tracts. He chose the option most burdensome both to himself and to his creditor, and the Court may not grant him further relief.

[3] Defendant's remaining contention, that he was entitled to a jury trial in the Superior Court, is also without merit. No issue of fact was raised which called for jury determination. The parties expressly stipulated "that there was no question of fact as to whether the Sheriff and appraisers properly performed the procedural steps required under N.C. G.S. Sec. 1-369, *et seq*.," and no question was raised as to the valuations made by the appraisers. The only issue raised was the legal one of whether our statutes and Constitution permit the defendant to claim his entire dwelling as his homestead exemption. We agree with the trial court that he was not.

Affirmed.

Judges MARTIN and ARNOLD concur.